### The People v. The Jackson and Michigan Plank Road Company.

Under the Plank Road act of 1848, on the completion of five consecutive miles of plank road, the right to take tolls became vested, and whatever might be the length of the road required by the charter, the right to tolls on the part so completed could not be forfeited or affected by the failure to construct the balance of the road.

The act assumes that if a certain distance is completed, it will be, as far as it goes, a public benefit, and may be used by the company for tolls, making them liable to forfeit for non-completion only so much as remains incomplete. And as the act points out what is necessary to completeness, no part of the road can be deemed completed which has not been laid out and built as the statute directs. Per CAMPBELL J.

At common law, however, a non-performance of the conditions of the act of incorporation was deemed a misuser which would forfeit the grant. And the twentieth section of said Plank Road Act, which saves the portion of the plank road so completed from the common law forfeiture for a failure to construct the remainder within the ten years allowed by the act, does not have any other or greater effect; but if the road be constructed in a manner not allowed by the act, that is another and distinct ground of forfeiture. Per MANNING J., MARTIN CH. J. concurring: CHRISTIANCY and CAMPBELL JJ., not concurring.

Information in the nature of a quo warranto against a plank road company, calling upon it to show by what authority it claims to have and use certain rights, privileges and franchises. Plea, setting up the act of incorporation, and alleging the construction of the plank road under it. If the People claim a forfeiture of the franchise of the company as to the whole road, on the ground that the road has not been constructed in the manner required by the charter, the replication to this plea should show that no five consecutive miles had been so constructed; and if a forfeiture is claimed as to a part of the road only, it should show specifically what part of the road was not so constructed. Per CHRISTIANCY and CAMPBELL JJ. But per MANNING J. and MARTIN CH. J., it is not necessary to describe or designate the parts so improperly constructed, since this is cause of forfeiture not of the part so improperly constructed merely, but of the entire franchise.

THE PEOPLE *v.* THE J. & M. P. R. Co.

The five consecutive miles of a plank road first constructed by a plank road company under said act, can not be forfeited by a failure to keep in repair any other portion of the road when constructed. If, therefore, a forfeiture of the franchises as to the whole road is claimed for a neglect to keep the road in repair, the pleadings should show that the five consecutive miles first constructed are not kept in repair. Per CHRISTIANCY and CAMPBELL JJ.

Whether a forfeiture is claimed for failure to construct as required by the act, or for neglect to keep in repair, the pleadings should show with certainty what parts are incomplete, or what parts are suffered to be out of repair in order to prevent a liability to repeated vexations, as well as to confine the evidence on the trial to some tangible issue. And where a partial forfeiture is claimed for failure to construct the road properly, this certainty is necessary for the further reason, that without it the record does not show the portion claimed to have been forfeited, and there is nothing to base a judgment upon, or to compare it with when rendered to determine whether it corresponds with the issue. Per CAMPBELL and CHRISTIANCY JJ.

Absolute perfection can not be required as the standard of repair, nor can slight or occasional defects operate as a forfeiture; nor even such as interfere with the safety or convenience of travel, if repaired within a reasonable time. And therefore, on quo warranto to have the franchises of a plank road company adjudged forfeited for neglect to keep the road in repair, the pleadings should show how and to what extent the road was out of repair, and that it had continued in that state for an unreasonable length of time. Per CHRISTIANCY J.; CAMPBELL J. concurring.

An act subsequent to the charter of a corporation and not assented to by it, which subjects the company to a total forfeiture for that which under its charter was cause of partial forfeiture only, is void as violating the obligation of contracts. Per CHRISTIANCY J.; CAMPBELL J. concurring.

So also if it import a new and additional term into the contract, and impose a forfeiture of the franchise for a violation thereof. Per CHRISTIANCY J.; CAMPBELL J. concurring.

Where by the charter of a plank road company, the convenience and safety of travel were expressly contracted and amply provided for, and penalties for a breach of the obligation fixed which, if enforced, would amply satisfy every requirement of safety and convenience, a subsequent act imposing an entire forfeiture of the franchises of the company for a neglect to keep in repair any portion of the road, can not be held valid as a proper exercise of the police power of the State. Per CHRISTIANCY J.; CAMPBELL J. concurring.

*Submitted on briefs July 11th. Decided October 30th.*

Information in the nature of a quo warranto. The following is the information:

"State of Michigan, Supreme Court. Jackson county, ss. Jacob M. Howard, Attorney General of the People of the State of Michigan, who sues for the said People in this behalf, comes here into the Supreme Court of this State, on the eleventh day of January, in the year one thousand eight hundred and sixty, and for the said People of the

State of Michigan, at the relation of Edward Morrill, and Nathaniel Morrill, of the county of Jackson aforesaid, according to the form of the statute in such case made and provided, gives the said court here to understand and be informed, that the Jackson and Michigan Plank Road Company, to wit, at Jackson, in the county of Jackson, for the space of five years now last past and upwards, have used, and still do use, without any warrant, grant or charter, the following liberties, privileges, franchises, to wit: That of being a body politic and corporate in law, fact and name, by the name of Jackson and Michigan Plank Road Company, by the same name to plead and be impleaded, to answer and to be answered unto; and also the following liberties, privileges and franchises, to wit: that of constructing and maintaining a plank road, beginning at a certain point in the county of Jackson, and terminating at a certain point in the county of Eaton, and of levying, collecting and receiving tolls from all persons using such road, and also the following liberties, privileges and franchises, to wit: that of constructing and maintaining a road partly of plank and partly of gravel, beginning at a certain point in the county of Jackson, and terminating at a certain other point in the county of Eaton, and of levying, collecting and receiving tolls from all persons using such road, all which said liberties, privileges and franchises the said Jackson and Michigan Plank Road Company, during all the time aforesaid, have usurped and still do usurp upon the said People, to their great damage and prejudice. Thereupon the said Attorney General prays the advice of the said court in the premises, and due process of law against the said Jackson and Michigan Plank Road Company, in this behalf to be made to answer to the said People, by what warrant they claim to have, use and enjoy the liberties, privileges and franchises aforesaid."

To this information the defendants pleaded as follows: " The said Jackson and Michigan Plank Road Com-

THE PEOPLE v. THE J. & M. P. R. CO.

pany having appeared in this court, by Gridley & Conely
the attorneys for said Company, and having heard the
information of the said People read, complain that under
color of the premises in the said information contained,
they are greatly vexed and disquieted, and this by no
means justly, because protesting that the said information
and the matters therein contained are insufficient in law,
and that the said Company need not, nor is it obliged
by the law of the land to answer thereto, yet for plea in
this behalf, the said Jackson and Michigan Plank Road
Company says, that by a certain act of the Legislature
of the State of Michigan, approved on the 3d day of
April A. D. 1848, entitled "an act to incorporate the Jack-
son and Michigan Plank Road Company," it was enacted
that George B. Cooper, Guy Foote, Wilbur F. Storey,
Amos Root and Jeremiah Marvin be, and they were thereby
appointed commissioners, under the direction of a majority
of whom subscriptions might be received to the capital
stock of the said Jackson and Michigan Plank Road Com-
pany, and the subscribers thereto with such other persons
as should associate with them for that purpose, their suc-
cessors and assigns, should be, and they were thereby
created a body corporate and politic, by the name and
style of the Jackson and Michigan Plank Road Company,
with corporate succession, and it was further enacted in
and by said act, that said Company thereby created, should
have the power to lay out, establish and construct a plank
road and all necessary buildings from Jackson, in the county
of Jackson, to Michigan (now Lansing) in the county of
Ingham, and that the provisions of an act entitled An Act
relative to Plank Roads, approved March thirteenth, eighteen
hundred and forty - eight, should be, and were thereby made
a part of said act approved April 3d, 1848: and the said
Jackson and Michigan Plank Road Company further says,
that by the said act approved March 13th, 1848, entitled
"An Act relative to Plank Roads," it was enacted that all

corporations thereafter created for the purpose of construct-
ing plank roads should be subject to the provisions therein-
after contained; that all such corporations should be deemed
persons in law, and as such capable of suing and being
sued in all courts, and in all manner of actions, and might
have a common seal, and be capable of purchasing and
acquiring from any person or persons, by gift, grant or
otherwise, and holding any land, tenements and heredita-
ments necessary to be used in the construction, repair and
preservation of such road, and might establish by-laws
and regulations necessary for the construction and preserva-
tion and repair of any such road, and the erection of toll
gates and houses thereon; that within six months after
the passage of an act incorporating any such company,
the commissioners named therein should proceed to esti-
mate the length of the proposed road, and cause books
to be opened for the subscription of stock in any such
company, at such times and places as they might see fit,
first giving at least thirty days' notice thereof, which said
notice should be published in some public newspaper printed
in some county in which or through which some part of
the proposed road was to be constructed, and the said
commissioners or a majority of them should attend at such
times and places, for the purpose of receiving such sub-
scriptions.    That whenever, according to the length of
the road as estimated by the commissioners, three hun-
dred dollars per mile of the capital stock of any such
company should have been subscribed, the commissioners
should proceed to call a meeting of the stockholders in any
such company, by giving notice of such meeting, by pub-
lishing such call in some newspaper published in one of
the counties in or through which the proposed road was
to be constructed, and that such notice should be signed
by such commissioners or a majority, and should specify
the time and place at which said meeting would be held,
and should be published at least two weeks consecutively

next preceding the day of such meeting : That at the meeting so called, the stockholders present should elect not less than three nor more than five directors; and they the said directors should proceed forthwith to elect from their own number, a president, treasurer and secretary; that the business and property of such companies should be managed and conducted by their respective boards of directors; that the board of directors of such company, after the same should become organized as required by the provisions of said last mentioned act, should proceed to cause an accurate survey and description to be made of the route of their road, and of the land necessary to be taken by said company for the construction of such road, and the ' necessary buildings and gates; that they should subscribe such survey, and acknowledge its execution as the execution of deeds was required to be acknowledged in order that they might ' be recorded, and they should cause such survey to be recorded in [the register's office of each county through which their road might pass: that the route so laid out and surveyed by the said board of directors of such company should be the route of such road: that whenever any such company should have completed their road, or any five consecutive miles thereof, the directors thereof might erect toll gates and exact tolls from persons travelling on their road for so much as might be completed, at a rate not exceeding two cents per mile for any vehicle or carriage drawn by two animals, and one cent per mile for every sled or sleigh so drawn, and if drawn by more than two animals, three - quarters of a cent per mile for every additional animal, for every vehicle, sled, sleigh or carriage drawn by one animal one cent a mile, for every score of sheep or swine half a cent a mile, for every score of neat cattle, two cents a mile and for every horse and rider or led horse, one cent a mile; as in and by the said acts of the Legislature of the State of Michigan, reference being thereunto had, will, among other things, more fully and at large appear.

THE PEOPLE *v.* THE J. & M. P. R. Co.

And the said Jackson and Michigan Plank Road Company further says, that the said commissioners named in the said first mentioned act of the Legislature, did, within six months after the passage of the act incorporating said company, proceed to estimate the length of the proposed road of said company, and did cause books to be opened for the subscription of stock in said company, after having given at least thirty days' notice thereof by publishing the same in the Jackson Patriot, a public newspaper then printed in the county of Jackson, the said county being one of the counties in which some part of the proposed road was to be constructed, and the said commissioners or a majority of them did attend at the times and places specified in said notice, for the purpose of receiving such subscriptions; that subscriptions were made at the opening of said books to the capital stock of said company exceeding the amount of three hundred dollars per mile, according to the length of the road of said company as estimated by said commissioners, after which the said commissioners did proceed to call a meeting of the stockholders of said company; that they gave notice of such meeting, by publishing the same in the said newspaper; that said notice was signed by said commissioners, and specified the time and place at which said meeting would be held, and the same was published at least two weeks consecutively next preceding the day of such meeting. That at the meeting so called, to wit, on the fourteenth day of February, in the year eighteen hundred and forty-nine, the stockholders of said company or some of them were present, and they did then and there elect from the said stockholders five directors of said company, and the said directors did forthwith elect from their own number, a president, [treasurer and secretary of said company. That the said Board of directors of said company, after said company had become organized as aforesaid, did cause an accurate survey and description to be made of the

route of their road, from Jackson, in the county of Jackson, to Michigan (now Lansing), in the county of Ingham, by the way of Eaton Rapids, in the county of Eaton, and of the land necessary to be taken by said company for the construction of their said road, and the necessary buildings and gates, and they subscribed said survey, and acknowledged the execution thereof as the execution of deeds is required to be acknowledged, and they did cause said survey to be recorded in the offices of the registers of deeds of the counties of Jackson, Eaton and Ingham, being each and all of the counties through which the said route of the road of said company passed. That afterwards the said company proceeded with the construction of their said plank road, and constructed and completed the same from Jackson, in the county of Jackson, to Eaton Rapids, in the said county of Eaton, and when the said company had completed five consecutive miles thereof, and on the twenty-seventh day of November, in the year eighteen hundred and fifty, the directors of said company did, by a resolution duly passed on the day and year last aforesaid, require that tolls should be exacted from persons travelling on their said plank road at the following rates: two cents per mile for any vehicle or carriage drawn by two animals, and one cent per mile for every sled or sleigh so drawn, and if drawn by more than two animals three-quarters of a cent per mile for every additional animal, for every vehicle, sled, sleigh or carriage drawn by one annimal one cent a mile, for every score of sheep or swine half a cent a mile, for every score of neat cattle two cents a mile, and for every horse and rider or led horse one cent a mile. And the said Jackson and Michigan Plank Road Company further says, that by the force of the said acts of the Legislature and of the provisions thereof, and by the organization of said company as aforesaid in pursuance of the provisions of said acts, the said company was created and constituted and still continues to be and is a body poli-

tic and corporate, in fact and in name, and is entitled to do all lawful acts, and to have, use and enjoy all the rights, liberties, privileges and franchises and immunities granted to and conferred upon it by the said acts, and by the laws of the land; by virtue whereof the said company for all the time in the said information in that behalf mentioned, have used and exercised, and still does use and exercise the liberties, privileges and franchises of a body politic and corporate, in law, fact and name, by the name of the Jackson and Michigan Plank Road Company, and by the same name of suing and being sued in all courts and in all manner of actions, and also the liberties, privileges and franchises of building and constructing a plank road from Jackson, in the county of Jackson, to Michigan (now Lansing), in the county of Ingham, and of exacting tolls from persons travelling on the said plank road, and transacting other business which incorporated plank road companies may lawfully transact by virtue of their respective acts of incorporation. And the said Jackson and Michigan Plank Road Company further says, that by a certain other act of the Legislature of this State, approved on the ninth day of February, A. D. 1853, entitled "An Act to amend sections three, nine, eighteen, nineteen and twenty of an act entitled An Act relative to Plank Roads, approved March 13th, 1848, and to add thereto six new sections, to stand as sections twenty-five, twenty-six, twenty-seven, twenty-eight, twenty-nine and thirty," it was enacted among other things, that any plank road company organized under the provisions of the act approved March 13th, 1848, should be subject to the provisions of all amendments made or to be made thereto, whenever the assent of any such company, certified by the president and secretary thereof, to the provisions of such amendments, should be filed in the office of the Secretary of State, as will by reference to said act more fully and at large appear. And the said company further says, that by a certain other act of the Legislature of this State, approved on the 12th

·day of February, A. D. 1855, entitled "An Act to amend An
Act entitled An Act relative to Plank Roads, approved March
13th, 1848, and an act amendatory thereto, approved Feb-
ruary 9th, 1853, and to add two new sections thereto,"
it was enacted among other things, that all companies that
had been or might be thereafter organized subject to the
provisions of the said act approved March 13th, 1848, in-
stead of the eight feet in width· of plank road required by
section sixteen of said act, might construct all or any por-
tion of said road of gravel instead of plank, and might sub-
stitute gravel instead of plank where plank was then used,
or of stone so broken as to subserve the purposes of gravel,
provided that said gravel road should, in all cases, be not
less than nine feet in width, and the gravel of which the
same was constructed should· not be less than ten inches
deep, which should be properly screened, as will by refer-
ence to said last mentioned act more fully appear.  And the
said company further says, that by a certain other act of
the Legislature of this State, approved February 17th, 1857,
·entitled "An Act to amend An Act relative to Plank Roads,
approved March thirteenth, eighteen hundred and forty-
eight, and the act amendatory thereto, approved February
twelfth, eighteen hundred and fifty-five," it was enacted
among other things, that all plank road companies that had
been or might be thereafter organized subject to the pro-
visions of said act approved March 13th, 1848, instead of
eight feet in width of plank road required by section six-
teen of said last mentioned act, might construct all or any
portion of said road of gravel instead of plank, where plank
was then used, or of stone so broken as to subserve the
purposes of gravel; provided that said gravel portion of said
road should in all cases be not less than nine feet in width,
.and the gravel of which the same was constructed should
be· not less than seven inches in depth, as will by said last
mentioned act, reference being thereto had, more fully ap-
pear.  And said company further says, that the assent of

said company has been given to the said acts so aforesaid approved on the 9th day of February, A. D. 1853, the 12th day of February, A. D. 1855, and the 17th day of February, A. D. 1857, and the same have been filed in the office of the Secretary of State, and by virtue of said last mentioned acts, the said company have used and exercised and still do use and exercise the liberties, privileges and franchises of substituting gravel instead of plank, or stone so broken as to subserve the purpose of gravel, where plank has been used in the construction of said road, and of exacting toll from all persons travelling thereon at the rates aforesaid. And the said Jackson and Michigan Plank Road Company have claimed, used and enjoyed, and yet do claim to have use and enjoy, all the liberties, privileges and franchises allowed to and conferred on them in and by the aforesaid several acts of the said Legislature, as it was and is lawful for them to do, without this that the said Jackson and Michigan Plank Road Company, during all or any part of the time mentioned in the said information, have usurped or do still usurp the said liberties, privileges and franchises, mentioned in the said information, or any of them, upon the said People of the State of Michigan, in manner and form as by the said information is above supposed: all which said several matters and things the said Jackson and Michigan Plank Road Company is ready to verify, &c. Whereupon the said company prays judgment, and that the aforesaid liberties, privileges and franchises by the said company claimed in manner aforesaid, may be allowed and adjudged to it, and that the said company may be dismissed and discharged by the court here of and from the premises above charged upon it, &c."

The following are copies of the replications:

*First Replication* — "And the said Jacob M. Howard, Attorney General, having heard the said plea of the said Jackson and Michigan Plank Road Company, for the said People of the State of Michigan saith that the said Peo-

ple ought not to be barred from having their aforesaid
information against the said Jackson and Michigan Plank
Road Company, because he says that the said Jackson
and Michigan Plank Road Company after their incorpora-
tion did not construct nor cause to be constructed their
plank road of such grade as not to exceed an ascent or
descent on any part of said road of more than one foot
in ten feet, but on the contrary thereof, did wilfully or
negligently construct the same in many parts thereof with
a much greater ascent or descent, to wit, with an ascent
or descent of more than one foot in eight feet, and the
same still so continues, and this he is ready to verify,
wherefore he prays judgment, and that the said Jackson
and Michigan Plank Road Company may be ousted and
altogether excluded from its rights, privileges and fran-
chises, and that the said corporation be dissolved.

*Second Replication* — "And the said Attorney General
further saith, that the said People ought not to be barred
from having their aforesaid information against the said
Jackson and Michigan Plank Road Company, because he
says that the said Jackson and Michigan Plank Road Com-
pany, after their incorporation and after the erection of
toll gates upon their plank road, and the exaction of toll
thereat, did wilfully or negligently so manage their affairs
that afterwards to wit: on the first day of January, 1856,
the said plank road became and was worn out, broken
and out of repair, and the planks thereof were in many
parts of said plank road displaced, warped and rotten, so
that the said plank road was and still continues dangerous
and inconvenient to pass over, and so the said Attorney
General says that the board of directors of the said com-
pany have not at all times, nor at any time since the
said first day of January, 1856, although toll gates had
been erected and toll exacted thereat upon the said plank
road long before that time, kept the said plank road in
good repair, nor has the said company so kept the same

in good repair and this he is ready to verify, wherefore he prays judgment, and that the said Jackson and Michigan Plank Road Company may be ousted and altogether excluded from its corporate rights, privileges and franchises, and that the said corporation be dissolved."

*Third Replication* — "And the said Attorney General further saith, that the said People ought not to be barred from having their aforesaid information against the said Jackson and Michigan Plank Road Company, because he says that the said Jackson and Michigan Plank Road Company, after their incorporation, did not and have not caused to be laid down and kept closely together and in even manner, so that the surface should be uniform, the plank upon its road, but during all the time since their incorporation until this time, the said Jackson and Michigan Plank Road Company have willfully and knowingly neglected so to keep the same, and have permitted and allowed the said plank upon said plank road to become separated and displaced, broken and uneven, to the great hindrance, inconvenience and injury of all persons traveling thereon, and this he is ready to verify, wherefore he prays judgment, and that the said Jackson and Michigan Plank Road Company may be ousted and altogether excluded from its corporate rights, privileges and franchises, and that the said corporation be dissolved."

*Fourth Replication* — "And the said Attorney General further saith, that the said People ought not to be barred from having their aforesaid information against the said Jackson and Michigan Plank Road Company, because he says that the said company heretofore, to wit: on the first day of October, 1856, and on divers other days and times between that day and the filing of the information in this cause, has removed and caused to be removed the plank from a large portion of the said plank road, to wit: from six miles thereof; and for a considerable portion of such distance, to wit: for one mile thereof, have not sub-

stituted anything in the place of such plank, but have
wilfully or negligently caused or permitted the same so
to continue, without anything substituted for such plank,
for the space of two years or more, and still so to con-
tinue; and for the remainder of such distance from which
said plank have been so removed, the said Jackson and
Michigan Plank Road Company has not substituted gravel
entirely for such plank, but a mixture of earth and gravel,
of such quality as is very inferior to gravel, nor has the
said company constructed said road composed of earth
and gravel not less than nine feet in width, and of the
depth of seven inches, but the same is of the width of
less than eight feet, and of a depth of less than six inches ;
nor has the said company kept the said pretended gravel
road in repair in pursuance of the statutes in such case
made and provided; and this he is ready to verify; where-
fore he prays judgment, and that the said Jackson and
Michigan Plank Road Company may be ousted and alto-
gether excluded from its corporate rights, privileges and
franchises, and that the said corporation be dissolved."

*Fifth Replication* — " And the said Attorney General
further saith, that the said People ought not to be barred
from having their aforesaid information against the said
Jackson and Michigan Plank Road Company, because he
says that the said company after their incorporation, men-
tioned in the said plea of the Jackson and Michigan Plank
Road Company, did not and has not so constructed its
road as to have at least sixteen feet width of good
smooth and permanent road, and so constructed as to per-
mit carriages and other vehicles conveniently and easily
to pass each other, but on the contrary thereof, the said
plank road was constructed of a much less width than
sixteen feet, with a rough and uneven surface, so that upon
a large portion thereof carriages and other vehicles could
not conveniently or easily pass each other, and the said
road has so continued until this time, and this he is ready

to verify, wherefore he prays judgment, and that the said Jackson and Michigan Plank Road Company be ousted and altogether excluded from its corporate rights, privileges and franchises, and that the said corporation be dissolved."

The defendants demurred to the replications as follows:

"To the first replication; "for that the said matters therein contained are not sufficient cause for ousting the said company of its said liberties, privileges and franchises, and dissolving said corporation; and also for that the same is uncertain in this, that it does not set forth what particular parts of the plank road of said company were constructed upon a grade with a greater ascent or descent than one foot in ten feet. And also for that the same is in other respects uncertain, informal and insufficient, &c."

To the second replication; "for that the said matters therein contained are not sufficient cause for ousting said company of its liberties, privileges and franchises, and dissolving said corporation. And also for that in the said replication secondly above pleaded it is argumentatively alleged that the plank road of said company has not been kept in good repair."

To the third replication; "for that the said matters therein contained, are not sufficient cause for ousting the said company of its said liberties, privileges and franchises, and dissolving said corporation. And also for that the said company are not required by law to lay down and keep closely together and in an even manner, so that the surface should be uniform, the plank upon said road as set forth in said replication. And also that the said replication thirdly pleaded, is in other respects uncertain, informal and insufficient, &c."

To the fourth replication; "for that the said matters therein contained, are not sufficient cause for ousting the said company of its said liberties, privileges and franchises, and dissolving said corporation. And also for that

the same, is double in this, that it contains several separate and distinct answers, and offers several and distinct issues upon the plea of said defendants, namely, whether the said company have, before the filing of said information, removed or caused to be removed the plank from a large portion of the said plank road, to wit: from six miles thereof; and whether the said company had not for a considerable portion of said six miles, to wit: for one mile thereof, substituted anything in the place of such plank; and whether for the remainder of said distance, the said company have not substituted gravel entirely for such plank, but a mixture of earth and gravel of a quality inferior to gravel; and whether the said company has constructed said road, composed of earth and gravel, less than nine feet in width and seven inches deep; and also whether the said company has kept the said gravel road in good repair in pursuance of the statute in such cases made and provided. Whereas, only one issue could or ought to have been offered or taken upon the said plea, or upon the matter therein contained, in and by the said replication fourthly above pleaded as aforesaid. And also for that the said replication fourthly above pleaded, is uncertain in this, to wit: that it does not set forth nor allege what particular part or parts of said plank road the said company have removed the plank therefrom; and in this, to wit: that it does not set forth nor allege what particular part or parts of said road from which said plank have been removed, there has not been substituted anything in the place of such plank; and in this, to wit: that it does not set forth nor allege upon what particular part or parts of said road there has been substituted a mixture of earth and gravel inferior to gravel, in the place of such plank. And in this, that the same does not set forth nor allege how or in what particular the said company have failed to keep said gravel road in repair. And also for that the same is in other respects uncertain, informal and insufficient, &c."

THE PEOPLE v. THE J. & M. P. R. Co.

To the fifth replication; "for that the matters therein contained are not cause for ousting said company of its liberties, privileges and franchises, and dissolving said corporation. And also for that the same is uncertain in this, to wit: that it does not set forth nor allege what part or parts of said road were so constructed as not to have at least sixteen feet in width of good sound and permanent road, nor where nor what parts thereof were constructed with a rough and uneven surface, nor upon what portions of said road carriages and other vehicles could not conveniently and easily pass each other. And also for that in the same it is argumentatively alleged that carriages and other vehicles could not conveniently and easily pass each other on said road, because the same was constructed of a rough and uneven surface. And also for that the same is in other respects uncertain, informal and insufficient, &c."

The People joined in demurrer.

*Gridley & Conely*, in support of the demurrer.

*A. Blair*, for the People.

CHRISTIANCY J.:

As the demurrer to the replication opens the whole record, so far as defects of substance may be found, and the plea is claimed to be defective for want of certainty, the sufficiency of the plea is the first question to be settled.

The information is general, calling upon defendants to show by what warrant they claim to have and use certain liberties, privileges and franchises. It does not go upon the ground of failure to comply with any act of incorporation, or other law granting such rights and franchises upon certain conditions, nor does it claim a forfeiture of rights admitted to have existed, upon this, or any such ground. The plea sets up the act of incorporation, their organization under it (and other acts), by their

alleged compliance with which the defendants claim the rights and franchises in question; alleges the construction of their road "from Jackson, in the county of Jackson, to Eaton Rapids, in the county of Eaton," without specifying the number of miles, otherwise than by saying that "when said company had completed five consecutive miles thereof, and on the twenty-seventh day of November, in the year eighteen hundred and fifty, the directors of said company did, by resolution duly passed, require that tolls should be exacted," &c.

It is not denied that the plea is a full answer to the information, upon every point except that of the right to take tolls. But by the law as it then stood—*Laws of* 1848, *p.* 65, § 17—five consecutive miles of the road were required to be completed before this right accrued; and the question is, whether the above cited allegation of the plea is sufficiently certain upon this point. Had the plea been specially demurred to for this reason, it might perhaps have been held bad in form, as it is not a direct and positive allegation of the completion of the five miles of road. But it is a formal defect only, which could not have been reached on general demurrer, and the People having replied without objecting to the defect, on demurrer to the replication we can not notice this formal defect in the plea: — *Steph. on Pl.* 177; 1 *Chit. Pl.* 707, 708.

The only questions in the case must therefore turn upon the sufficiency of the replications, which have been specially demurred to.

In determining these questions, it may be well to take a general view of the laws under which the franchises of the company are claimed, and then to inquire whether the replications exhibit a ground of forfeiture, and to what extent.

*First, as relates to the construction of the road.* As a pre-requisite to the right of taking toll, the company, as already noticed, were bound by the law of 1848 to have

completed five consecutive miles of their road. This was reduced to two miles by the act of February 12, 1855— *Comp. L.* §§ 1934, 1936—but whether this act can affect roads five miles of which had already been constructed, it is unnecessary here to inquire, as the questions here involved would not be materially altered. Upon the completion of the five consecutive miles under the act of 1848, the right to take toll became vested; and, whatever might be the length of the road authorized by the charter, the right to tolls on the part completed, could not, by any thing in this act, or any other act applicable to the case, be forfeited or affected by the failure to construct the balance of the road. This is evident from the 19th and 20th sections, by the former of which the company are to cease to be a body politic, if within two years they shall not have commenced the construction of their road, and actually expended thereon ten per cent. of the capital stock, and by the latter, if the road is not *completed* within ten years, the company "shall forfeit all rights to *so much* of the road as shall not be completed in a continuous line." These are the only penalties for failure to construct according to the act. If therefore a forfeiture of the franchise as to the entire road was claimed on the ground that the road had never been constructed in the manner required by the charter, it should have appeared upon the replication that no five consecutive miles of the road had been so constructed. And if the forfeiture of a part only were claimed on this ground, the replication should have shown specifically what part was not so constructed; otherwise the judgment of the court might be nugatory or uncertain, as the record would not show to what part of the road it applied.

This disposes of the first and fifth replications, which relate entirely to the question of construction of the road, and which, though literally true, would not be inconsistent with the fact of the due construction of five

consecutive miles of the road; since they amount to no more than an assertion that the road, *as a whole*, was not constructed according to the statute.

*Repairs.* As by the charter (for the act of 1848 is part of the charter) if five consecutive miles have been duly completed, the franchise can not be 'forfeited, as to the part so completed, by the failure to construct the balance, the question arises, whether if these five miles are kept in repair, and the remainder of the road or part of such remainder be afterwards constructed, would a failure to keep such remainder in. repair forfeit or affect the franchise as to the first five miles, while that is kept in repair? I think it would not. Had the company been under the obligation to construct the whole road authorized by the charter (as is frequently the case with turnpike charters), a neglect of this obligation, by which the public would lose the benefit in consideration of which the franchise was granted, might, unless otherwise provided, be ground for forfeiting the franchise for the whole road. Doubtless a failure to keep the remainder of the road in repair when constructed, would be cause of forfeiture *pro tanto:* but whether for the whole of such remainder, or only so much of it as was not, for five consecutive miles, kept in repair, it is unnecessary here to decide; since, from what has already been said, I think it sufficiently clear that, to authorize a forfeiture of the whole road on the ground of non-repair, the replication should have shown, at least, that the five miles first constructed had not been kept in repair; and to warrant the forfeiture of part for the same cause, the particular part, of which a forfeiture was sought, should have been in some way described and distinguished.

The second replication (which raises only the question of repair) is defective in this respect: all that is properly alleged in it may be strictly true and yet the five miles may have been all along in good repair. The general

statement with which this replication commences, is not of itself sufficient, without showing how and to what extent the road was out of repair, and that it had continued in that defective state for an unreasonable length of time. Absolute perfection can not be required as the standard of repair, nor could slight or occasional defects operate as a forfeiture, nor even such as interfered with safety or convenience, if repaired within a reasonable time. The company can not be required to repair before defects occur needing repair : and if the moment they occur their franchises are *ipso facto* forfeited, the charter is but an illusion and a snare. Admitting, therefore (without intending to decide), that any want of repair short of a virtual *non user* or abandonment would be cause of forfeiture, notwithstanding the penalty given by the twenty-third section, I am satisfied that no defects could be allowed so to operate except such as render the road unsafe for travel, or at least highly inconvenient, and these only when they had been continued an unreasonable length of time. It is only for defects which render the road unsafe that a penalty is given against the directors by the twenty-third section, and even this is not to be imposed till the time necessary for repairs has elapsed after notice of the defects. And it can hardly be supposed the Legislature intended the company should forfeit their entire charter for a less fault than that for which they have so guardedly imposed a small specific penalty. Now the general allegation of want of repair, at the beginning of the second replication, fails to show that the road was rendered unsafe or inconvenient by reason of want of repair, or to show any continuance of the deficiencies complained of. It charges only that it was out of repair on a certain day. These defects are supplied in the following portion of the replication by saying, "and the planks thereof were in *many parts* of said plank road displaced, warped and rotten, so that the said plank road was and still continues dangerous and inconvenient to pass

over." From these premises it proceeds to draw the conclusion that the road was out of repair, and to demand a forfeiture. It is therefore manifest that the whole allegation, taken together, amounts only to the assertion that the road was in many places so out of repair as to be inconvenient and dangerous: and this is a clear admission that in other portions it was not thus out of repair. It should therefore have distinguished the respective portions.

We have thus far considered the case as it depends upon the charter (and the act of 1848 a part of the charter), under which the company obtained their corporate rights. But the relator insists that, by the second section of the act of February 12th, 1855 — *Comp. L.* § 1933—the franchise is forfeited for the entire road, by a failure, as to any part of the road, to comply with this section. This brings us to the third replication, which appears to be framed entirely upon this section. As this section does not expressly refer to roads already existing under previous acts, I am inclined to think that, upon settled rules of construction, it should not be held to apply to such roads. " *Nova constitutio futuris formam debet imponere et non præteritis.*" See opinion of Kent J. in *Dash v. Vankleeck*, 7 *Johns.* 477 *and authorities cited.*

But if intended to apply to roads already constructed, it may be doubtful whether this section was intended to impose any additional obligation as to the condition of the road, beyond what was already imposed by the sixteenth and twenty - third sections of the act of 1848. By the sixteenth section of that act, the road was required to be constructed so as to have " at least sixteen feet width of good, smooth and permanent road, eight feet of which at least should be of plank not less than three inches thick," &c. By the second section of the act of 1855, just referred to, the company are required " to cause to be laid down and kept closely together the plank upon its road, and in case of default it shall forfeit the right to receive

any toll upon such road." If not intended to impose any new obligation, then the penalty of forfeiture of the whole charter is in reality imposed for a violation of the act of 1848, under which, as we have already seen, the whole could not be forfeited for this cause, if the five miles first constructed were kept in repair. The act of 1855 then imposes the penalty of entire forfeiture, while by the original act, which constituted the contract between the State and the company, a partial forfeiture only was allowed. On the other hand, if the act was intended to require the road to be kept in a more perfect condition than required by the act of 1848, then it not only imported a new and additional term into the contract, but imposed a forfeiture of the whole franchise for a violation of the new term thus imposed. In either view the act, in its application to roads already constructed by companies not having assented to it, must, I think, be void, as conflicting with the Federal Constitution; nor do I think it can be justified as a police regulation, under what is usually denominated the police power. Powers, the exercise of which can only be justified on this specific ground, and which would otherwise be clearly prohibited by the Constitution, can be such only as are so clearly necessary to the safety, comfort or well being of society, or so imperatively required by the public necessity, as to lead to the rational and satisfactory conclusion, that the framers of the Constitution could not, as men of ordinary prudence and foresight, have intended to prohibit their exercise in the particular case, notwithstanding the language of the prohibition would otherwise include it.

No such conclusion, I think, can reasonably be drawn in the present case. By the express provisions of the act of 1848 (§§ 16 and 23) which constituted the contract, both the convenience and safety of travel had been expressly contracted, and amply provided for, and the penalty for a breach of the obligation expressly agreed upon, or

left to result from the provisions of the law then in force. And such penalties, if enforced, would amply satisfy every requirement of safety and convenience. While the act of February 12, 1855, so far as it seeks to impose any additional obligation beyond the "good, smooth and permanent road" required by the 16th section of the act of 1848, could not be required for safety, and does not appear to have been based upon this idea; and the slight additional convenience, if any, which the act of 1855 might possibly secure, is not such as to induce the belief that it was not purposely and properly omitted in the original contract, nor such as to render the contract amendable at the option of one of the parties, especially where, as in this case, the contract expressly provides against such amendment. *Act of Incorporation, L. of* 1848, *p.* 369. When the public, through the Legislature, enter into a contract for securing the public convenience, they can not be required to insist upon the highest possible degree of convenience, nor can their failure to do so render the contract amendable at their option.

The fourth replication presents, *first*, the question of substitution of gravel for plank, under the act of February 19, 1857 (*Comp. L.* § 1881) and *secondly*, the question of repairs. This is demurred to on three distinct grounds: 1st, that it is not sufficient to oust the defendants; 2d, that it is bad for duplicity, and 3d, for uncertainty. It is unnecessary here to notice the first objection further than to say, that as relates to the question of forfeiture for the cause stated, this replication stands upon grounds analogous to those of the second relating to the question of repairs, and is to be governed by similar considerations. Upon the question of duplicity the replication is clearly bad; not because it states a great number of facts in relation to the removal of plank, and the failure in substituting gravel according to the act; as all of these facts bear upon the single point of substitution;—but because,

after having presented the issue upon this point, it proceeds to raise a distinct issue upon the question of keeping the gravel road in repair. See 1 *Chit. Pl.* 687. I think it also defective in certainty, in not describing in some way the portion of the road to which it was intended to apply.

The defendants, I think, are entitled to judgment on the whole record, but the People should be allowed to amend.

CAMPBELL J.:

I concur in the views expressed by my brother Christiancy. I think that where, as in a portion of the special replications in this case, it is alleged as a ground of forfeiture, that the road has not been completed according to the charter, it must appear either that no portion of it has been so completed, within the time prescribed, or else what portion is left incomplete. The statute assumes that if a certain distance is completed, it will be, as far as it goes, a public benefit, and may be used by the company for tolls, making them liable to forfeit for non-completion only so much as remains incomplete. A total forfeiture can only be claimed for a neglect to complete the smallest distance allowed as a toll road. A partial forfeiture for non-completion must be confined to the parts unfinished for a sufficient length. And as the act points out what is necessary to completeness, no part of the road can be deemed completed which has not been laid out and built as the statute directs.

The case made by the replication, so far as it relates to a failure to build the road in a proper manner, sets up a partial, and not a total failure. It claims that some parts are incomplete, but does not show what parts. Neither does it show the aggregate amount complete or incomplete.

The allegations upon which a forfeiture is sought for neglect to keep the road in repair, are equally silent con-

cerning the amount or location of the places where the road is defective, or their effect on the road as an entire work.

Both grounds of complaint are nearly analogous to prosecutions against corporations or other persons for allowing ways to become or remain out of repair. In such cases the rule is very well settled that the prosecution "must show with certainty the part of the road which is out of repair, how many yards in length, how many in breadth, &c. and must prove the case as laid." *Arch. Cr. Pl.* 644, 645, 41. This rule is founded on principle, and is necessary to prevent a liability to repeated vexations, as well as to confine the evidence on the trial to some tangible issue.

While these reasons apply equally to both issues referred to, the necessity for certainty in setting forth the parts of the road unfinished rests upon a still further ground. Without showing on the record the portion claimed to have been forfeited, there is nothing to base a judgment upon, or to compare it with when rendered, to determine whether it corresponds with the issue. A judgment of partial ouster must show to what extent the defendants have incurred a forfeiture, and can not extend beyond the charges alleged against them.

I think all the replications are defective in substance, and that the demurrers are well taken.

MANNING J.:

By § 5302 of the Compiled Laws, it is provided that an information in the nature of a quo warranto may be filed by the Attorney General against any corporate body, whenever such corporation shall; 1st, offend against any of the provisions of the act or acts creating, altering or renewing such corporation; or, 2d, violate the provisions of any law by which such corporation shall have forfeited its charter by misuser; or 3d, whenever it shall have forfeited its privileges and franchises by non-user; or, 4th, whenever

it shall have done or omitted any acts which amount to a surrender of its corporate rights, privileges and franchises; or 5th, whenever it shall exercise any franchise or privilege not conferred upon it by law.

Nelson, Ch. J. in *The People v. Kingston and Middletown Turnpike Road*, 23 *Wend*. 204, says, in speaking of a like statute, that "it obviously intended that corporations should fulfil the conditions and perform the duties enjoined by the fundamental law of their creation, as the terms upon which to enjoy their privileges. The principle is not new: it has been always so held at common law as fundamental. Lord Holt said, in *London City v. Vanacker*, 1 *Ld. Raym*. 498, 'all franchises which are granted are upon condition that they shall be duly executed, according to the charter that settles their constitution: and *that* being a condition annexed to the grant, the citizens can not make an alteration: but if they neglect to perform the terms of the patent, it may be repealed by *scire facias*.' The principle is so firmly fixed in the law of corporate bodies that I need do no more than refer to some of the authorities. A non-performance, therefore, of the conditions of the act of incorporation, is deemed *per se* a misuser, that will forfeit the grant even at common law."

The twentieth section of the Plank Road Act of 1848, providing for the forfeiture of the part of the road not completed in ten years, I understand as intending to give the corporation ten years to complete its road in, and to save to the corporation its franchises and the part of the road completed within that time, from the common law forfeiture of all its rights by its failure to complete the whole within the ten years. I can not bring my mind to believe it was intended to have any other or greater effect. The non-completion of the road in ten years is but one ground of forfeiture; the construction of the road in a manner not authorized by the act is another and dis-

tinct ground of forfeiture; and I am unable to see how a partial waiver of the first, by the act, can affect the second, or any cause of forfeiture mentioned in § 5302 of Compiled Laws.

The information calls on defendant to show by what authority it claims to be a corporation with authority to construct and maintain "a plank road, beginning at a certain point in the county of Jackson, and terminating at a certain other point in the county of Eaton, and of levying, collecting and receiving tolls from all persons using such road," &c.

The plea shows defendant to be a corporation to construct a plank road from Jackson, in the county of Jackson, to Michigan (now Lansing) in the county of Ingham, by the way of Eaton Rapids, in the county of Eaton. And states that it had "constructed and completed the same from Jackson, in the county of Jackson, to Eaton Rapids, in the county of Eaton," and admits the erection of gates and the taking of toll.

To this plea there are five replications, to each of which the defendant has demurred.

The first replication states that "the said Jackson and Michigan Plank Road Company, after their incorporation, did not construct nor cause to be constructed their plank road of such grade as not to exceed an ascent or descent on any part of said road of more than one foot in ten feet, but on the contrary thereof did willfully or negligently construct the same in many parts thereof with a much greater ascent or descent, to wit: with an ascent or descent of more than one foot in eight; and the same still so continues."

That this replication is good in substance I have no doubt. See *The People v. The Kingston and Middletown Turnpike Road Co.*, 23 *Wend.* 193; *People v. Bristol and Rensselaerville Turnpike Co.*, *Ibid.* 222 ; *People v. Hillsdale and Chatham Turnpike Road Co.*, *Ibid.* 254, in which the question of forfeiture is fully considered.

But it is said the plea is bad for uncertainty in this; "that it does not set forth what particular parts of the plank road of said company were constructed upon a grade with a greater ascent or descent than one foot in ten feet."

If the forfeiture was of the part of the road impropely constructed, and not of the franchise, the objection would undoubtedly be good. But holding as I do that an improper construction of the road is a forfeiture of the franchise, I see no good reason for locating the parts improperly constructed. The whole of the road must be constructed in the manner required by the act. This is a condition to the enjoyment of the franchise, which the corporation must at all times be ready to show when legally called on for that purpose. The plea alleges a construction of the road from Jackson to Eaton Rapids. The replication, admitting the construction, says it was constructed in many places on a grade of a greater ascent or descent than one foot in ten. Had the replication located the places, the People would no more be bound by them than by the day stated in an indictment that a murder was committed. For neither is of the essence of the issue. The replication is in every particular as certain as the replications that are held good in *The People v. Kingston and Middleton Turnpike Co.*

The first, second and fifth replications I think are good. That part of the second replication which states the road was not kept in repair by the *board of directors or company* may be regarded as surplusage. The replication is good without it. The third and fourth replications, I regard as bad.

MARTIN CH. J. concurred with MANNING J.

*Judgment for defendants, with leave to the People to amend.*