No. 9864.

THE STATE EX REL. JOSEPH A. WALKER AND VALENTINE MERZ VS. THE JUDGE OF SECTION "A," CRIMINAL DISTRICT COURT FOR THE PARISH OF ORLEANS ET AL.

1. When a party is prosecuted for crime under a law alleged to be unconstitutional, in a case which is unappealable, and where a proper plea setting up the unconstitutionality has been overruled by the judge, a proper case is presented for the exercise of our supervisory jurisdiction in determining whether the judge is exceeding the bounds of judicial power in entertaining a prosecution for a crime not created by law.

2. The Civil District Court for the parish of Orleans has no control, direct or indirect, over the Criminal District Court, and no injunction or order of any kind issued by the former can have effect to curtail, restrain or suspend the jurisdiction of the latter court.

3. If the district attorney, joined as respondent, has violated an injunction of the Civil District Court, to the prejudice of relators, their relief lies not in an appeal to our supervisory jurisdiction, but to the punitory powers of the court which issued the injunction.

4. Act No. 18 of 1886, known as the Sunday law, does not violate either Act 4 of the Con-

stitution of the State concerning religious liberty, nor the 14th Amendment to the Constitution of the United States, nor Art. 1 nor Art. 6 of the State Constitution, touching the constitutional protection of "life, liberty and property," and guarantee of "equal protection of the laws."

5. Said act is a valid exercise of the police powers of government, the nature, extent. and grounds of which are discussed and expounded, and therefore subject to none of the constitutional inhibitions urged.

APPLICATION for Certiorari and Prohibition.

*Braughn, Buck, Dinkelspiel & Hart* for the Relators :

1. The writ of prohibition issues when one court takes jurisdiction of a cause that belongs to another; the writ of certiorari issues in unappealable cases to test the validity of judicial proceedings. C. P. Art. 846 and 855.

2. Civil courts may issue injunctions against the enforcement of penal laws. High on Injunction ; 24 Ann 86 ; 3 Woods, 222.

3. By means of the writ of certiorari, the Supreme Court, in an unappealable case, may pass upon the existence or non-existence, constitutionality or unconstitutionality, of an act of the legislature 30 Ann. 454; 34 Ann. 504; 32 Ann. 719 ; 37 Ann. 579.

4. Act 18 of 1886 is unconstitutional, because violative of the 14th Amendment of the Constitution of the United States, and of the first, fourth and sixth articles of the Constitution of Louisiana. 33 Ann. 981; 1 Fed. Rep. 481; 11 Rep. 10; 16 Wall. 97.

*M. J. Cunningham*, Attorney General, for the Respondents.

The opinion of the Court was delivered by

FENNER, J. Relators invoke the exercise of our supervisory jurisdiction through the writs of prohibition and certiorari, for the purpose of restraining the respondent judge and the district attorney of the parish of Orleans from proceeding further in certain criminal prosecutions instituted and pending in the Criminal District Court of said parish, for alleged violations of Act No. 18 of 1886, commonly known as the "Sunday law," and of annulling the proceedings already had in said causes.

The grounds assigned for the relief sought are two-fold, viz :

1st. Because said criminal prosecutions were instituted in, and entertained by, the said Criminal District Court, in violation of an injunction previously issued by Division "A" of the Civil District Court for the parish of Orleans, restraining the Mayor of New Orleans, the Chief of Police, the several recorders of the city, the district attorney, the assistant district attorney and the criminal sheriff for the parish of Orleans from arresting, or instituting proceedings against relators, for any violation of the provisions of said Act No. 18, until the further order of said Civil District Court.

2d. Because said Act No. 18 of 1886, having been passed by the General Assembly in violation of the Constitutions of the United

States and of the State of Louisiana, is not a valid law, and the alleged violation thereof by relators is not a crime and cannot form the basis of a criminal prosecution against them.

## I.

The first question to be determined is whether, conceding the allegations of relators' petition to be true, the case is a proper one for the exercise of our supervisory jurisdiction.

The cases pending in the Criminal District Court against relators under said Act No. 18 of 1886, are for offenses the penalty imposed for which is not of a character to vest this Court with appellate jurisdiction thereof, and no other court is vested with any appellate jurisdiction over said Criminal District Court.

The relators have filed in said court proper pleas *in limine* presenting the foregoing objections to the proceedings which have been heard and overruled by the judge.

It is plain, therefore, that however just be relators' cause, they are absolutely without any legal remedy unless they may find one under our supervisory jurisdiction.

Two propositions appear to our minds sufficiently clear:

1st. If the injunction issued by the Civil District Court had the legal effect to deprive the Criminal District Court of the right to entertain the prosecutions referred to, the latter exceeded the bounds of its jurisdiction in proceeding therewith.

2d. If the law for the violation of which relators are being prosecuted is unconstitutional, then it is not a law and no court can have power or jurisdiction to arraign, try and punish a citizen who is not charged with the violation of law, and such proceedings are null and void.

In Liversey's case, 34 Ann. 741, we held, in substance, that where the proceedings of a court were in excess of judicial power they were null and void and would be so held under our supervisory jurisdiction.

In Carcase's case, 32 Ann. 719, we took cognizance, under like proceedings, of a complaint that the relator had been prosecuted, tried and convicted under a law which had been repealed by the Constitution of 1879.

Analogous rulings were made in Jarvo's case, 37 Ann. 578, and in Hirsch's case, 38 Ann., not yet reported. In Geale's case, 30 Ann. 454, the court indicated a like opinion on general principles, but refrained from exercising the jurisdiction on account of the special restriction imposed by the Constitution of 1868, confining the power to issue these writs to cases where they were invoked "in aid of its appellate juris-

diction." This restriction is absent from the present Constitution. State ex rel. City vs. Judge, 32 Ann. 540.

We, therefore, hold that, if relator's allegations were founded in law, in fact they would be entitled to relief at our hands.

## II.

What effect had the injunction issued by Division A of the Civil District Court upon the jurisdictional power and authority of the Criminal District Court ?

We are bound to hold that it had none. The Criminal District Court derives its jurisdiction exclusively from the Constitution, and is, in no manner, subordinate to, or subject to the control of, the Civil District Court, which is vested with no power of any kind to curtail, extend, suspend or regulate its action in any case.

It is proper to say that the judge of the Civil District Court, who issued this injunction, has not assumed, and never would have thought of assuming, to exercise any such power.

His injunction is not addressed to the Criminal District Court or to the judges thereof. It is addressed to certain other public officers, who are vested with functions, not judicial, in the execution of the criminal laws of the State.

The judge of the Civil District Court is not a party to this application, and we are not called upon to adjudge the validity or regularity of his proceedings.

Conceding their validity, *argumenti gratia*, they do not concern, and are entirely inoperative upon, the respondent judge ; and, so far as the district attorney is concerned, if he has violated the injunction addressed to him, the remedy is not found in an appeal to our supervisory jurisdiction, but in a proceeding for contempt before the judge who issued the injunction.

The power assumed by the judge of the Civil District Court is analogous to the jurisdiction exercised by Courts of Equity in enjoining proceedings at law. Such injunctions do not run against the courts of law or their judges, but only against the parties litigant therein. While they may be enforced by punitory measures against parties violating them, it is held that they are inoperative against the courts of law, and are without effect to oust their jurisdiction, restrain their proceedings or avoid their judgments. High on Injunction, §46 ; Hill on Injunction, C. 6, p. 13.

This ground of relief is, therefore, unfounded.

136        SUPREME COURT OF LOUISIANA.

State ex rel. Walker and Merz vs. Judge.

### III.

Is Act No. 18 of 1886, known as the Sunday law, unconstitutional ? Its salient object is to require the closing of all places of business, with exception of certain designated classes, from 12 o'clock on Saturday night until 12 o'clock on Sunday night of each week, and to punish violations thereof by criminal penalties.

We shall now consider the various charges of unconstitutionality brought against the law.

1st. It is charged with violating Art. 4 of the Constitution of the State, which prohibits the passage of any law "respecting the establishment of religion or the free exercise thereof."

We take occasion promptly to say that if the object of this law were to compel the observance of Sunday, as a religious institution, because it is the Christian Sabbath, to be kept holy under the ordinances of the Christian religion, we should not hesitate in declaring it to be violative of the above constitutional prohibition.   It would violate equally the religious liberty of the Christian, the Jew and the infidel, none of whom can be compelled by law to comply with any merely religious observance, whether it accords with his faith and conscience or not.   With rare exceptions the American authorities concur in this view.   State vs. Bott, 31 Ann. 663 ; State vs. Baum, 33 Ann. 985 ; Corporation vs. Minden, 36 Ann. 913 ; McGatrick vs. Wason, 4 Ohio, 566 ; Com. vs. Has, 122 Mass., 40 ; Com. vs. Specht, 8 Penn., St., 312; Com. vs. Nesbit, 34 id. 398 ; Hudson vs. Geary, 4 R. I., 485 ; State vs. R. R., 15 W. Va., 362 ; Charleston vs. Benjamin, 2 Stroble, 508 ; Johns vs. State, 78 Ind., 332 ; Bohl vs. State, 3 Tex. App., 683.

The law in question makes no reference to Sunday as a religious holy day, and, indeed, the exceptions expressly made to the general prohibition conclusively show that the statute is not designed to enforce the Christian idea of the Sabbath, or to apply the rules of any religious sect to its observance.

The statute is to be judged precisely as if it had selected for the day of rest any day of the week other than Sunday ; and its validity is not to be questioned because, in the exercise of a wise discretion, it has chosen that day which the majority of the inhabitants of the State, under the sanction of their religious faith, already voluntarily observe as a day of rest.

For these reasons we consider that the constitutional provision now under consideration has no application.

2d.   It is claimed that the law conflicts with that clause of the Fourteenth Amendment to the Constitution of the United States,

which forbids any State to "make or enforce any law which shall abridge the privileges or immunities of citizens of the United States."

No one who has read the decision of the Supreme Court of the United States in the celebrated Slaughterhouse cases, can, for a moment, doubt that this clause is entirely without application. Fortunately for the preservation of State autonomy and the inestimable right of local self-government, that high tribunal has wisely distinguished the "privileges and immunities" of *citizens of the United States* from those which appertain to *citizens of the State.* To the latter class belong, as it holds, all those fundamental civil rights far the security and establishment of which organized society is instituted, and these remain, with certain exceptions expressly established by the Federal Constitution, subject to the exclusive control and authority of the States free from all Federal restraint. On the other hand, the "privileges and immunities of citizens of the United States" are those which arise out of the nature and essential character of the national government, the provisions of its constitution and the laws and treaties made in pursuance thereof; and these alone are placed under Federal protection by the clause quoted. It declares that a different construction "would transfer the security and protection of all civil rights from the States to the Federal government;" would authorize Congress to "pass laws in advance, limiting and restricting the exercise of legislative power by the States in their most ordinary and usual functions," and would constitute the Supreme Court of the United States "a perpetual censor upon all legislation of the States on the civil rights of their own citizens with authority to nullify such as it did not approve as consistent with those rights. Wherefore the Court said : "We are convinced that no such results were intended by the Congress which proposed these amendments, nor by the legislatures of the States which ratified them." Slaughterhouse cases, 16 Wall. 36.

It is needless to say that the privileges and immunities involved under this statute belong to that class which the court characterizes as those of citizens of the State, and therefore are not referred to by this clause of the Fourteenth Amendment.

3d. The other constitutional inhibitions invoked may be grouped and considered together.

They are (1st) the remaining clauses of the Fourteenth Amendment, viz : " Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of its laws;" (2d) the clause of Art.

6 of the State Constitution declaring that no person shall be " deprived of life, liberty or property without due process of law;" and (3d) the declaration in Art. 1 of the State Constitution that government's "only legitimate end is to protect citizens in the enjoyment of life, liberty and property. When it assumes other functions it is usurpation and oppression."

All these provisions simply express fundamental principles of American constitutional government, which are embodied or necessarily implied in the constitutions of all the States, and are everywhere recognized and enforced.

It is not essential to discuss them severally, or with too great nicety, for it is universally admitted that, however broadly these principles may be expressed, there exists, *ex necessitate rei*, in every government, the power to impose certain restrictions upon individual rights of " life, liberty and property," which it is not within the meaning and intent of such provisions to prohibit or restrain. Without such power society and government could not exist, or would subserve no useful purpose, the main object of government being to prevent individuals, in the exercise of their own rights, from transgressing the rights of others, and to impose that degree of restraint upon the conduct of each which is necessary to the conservation and promotion of the rights of all.

This is what is known as the police power of government, and it is founded in and properly limited by a just and reasonable application of the principle, *"sic utere tuo ut alienum non lædas."*

As has been said by an eminent judge, " it is much easier to perceive and realize the existence and sources of this power than to mark its boundaries or prescribe limits to its exercise." Definitions of it have been given by Blackstone, by Judge Cooley, by Chief Justice Shaw of Massachusetts, by Chief Justice Redfield of Vermont, by Judge Christiancy of Michigan, and by many other jurists and judges. *Vide* 4 Blackstone Con. 162; Cooley Const. Lim., 572; Com. vs. Alger, 7 Cush. 84; Thorpe vs. Rutland, 27 Vt. 140; People vs. Jackson, 9 Mich. 285.

The most recent writer on the subject, who is disposed to construe this power strictly, after quoting various definitions, uses the following language: " It is to be observed, therefore, that the police power of government, as understood in the constitutional law of the United States, is simply the power to establish provisions for the enforcement of the maxim, *sic utere tuo ut alienum non lædas.* ' This police power of the State (quoting Judge Redfield) extends to the protection of the

lives, limbs, health, comfort and quiet of all persons and the protection of all property within the State. According to the maxim, *sic utere,* etc., it must of course be within the range of legislative action to define the mode and manner in which every man may so use his own as not to injure others.' Any law which goes beyond that principle, which undertakes to abolish rights the exercise of which does not involve an infringement of the rights of others or to limit the exercise of rights beyond what is necessrry for the public welfare and general security, cannot be included in the police power of the government. It is a governmental usurpation." Tiedeman's Limitations of Police Power, p. 4.

We have quoted this passage as an exposition of what we conceive to be the true meaning of the clause quoted above from Art. 1 of our State Constitution and as a sound and conservative statement of the extent of the police power, showing how broad it is, even under the strictest statement.

The same author says : " Where the letter of the Constitution would prohibit police regulations which, by all the principles of constitutional government, have been recognized as beneficent and permissible restrictions upon the individual liberty of action, such regulations will be upheld by the courts, on the ground that the framers of the Constitution could not possibly have intended to deprive the government of so salutary a power, and hence the spirit of the Constitution permits such legislation, although a strict construction of the letter may prohibit." Tiedeman, Lim. on Police Power, p. 12 ; People vs. Jackson, 9 Mich. 285.

So universal and long-continued has been this construction of constitutional inhibitions against governmental deprivation of life, liberty and property of citizens, that it may now be considered as written into every constitution.

It is the province of the law-making power to determine primarily what are the proper occasions and subjects for the exercise of this police power; and courts will only interfere with its action when satisfied that the restrictions imposed are not sustained by such considerations for the safety, comfort, health and well-being of society as bring them within the reasonable application of the maxim, *sic utere tuo ut alienum non lædas,* yielding due consideration to the discretion and good faith of a co-ordinate branch of the government, yet taking care that this principle shall not be used as a cloak for unwarrantable interferences with individual rights as secured by the constitution.

There exists a remarkable *consensus* of authority that the establish-

140          SUPREME COURT OF LOUISIANA.

State ex rel. Walker and Morz vs. Judge.

ment of a compulsory day of rest in each week is a legitimate exercise of the police power.

Such laws'have been passed in nearly every State of the Union and their constitutionality has never been successfully questioned in but a single case within our knowledge, that of *ex parte* Newman, 9 Cal. 502; and it was subsequently overruled by the same court in *ex parte* Andrews, , 18 Cal. 678.    See 40 Ala. 725; 5 Eng. (Ark.) 725; 30 Ark. 131; 19 Cal. 130; 3 Kelley (Geo.) 18; 5 Ind., 112; 33 id. 201; 20 Mo. 214; 2 Md. 310; 7 Gill (Md.) 326; 4 Ired. (N. C.) 400; 8 Gray (Mass.) 488; 2 Met. (Ky.) 3; 69 N. Y. 557; 20 How. Pr. (N. Y.) 76; 33 Barb. (N. Y.) 548; 4 Ohio St. 566; 25 id. 507; 3 Serg. & R. (Penn.) 48; 8 Penn. St. 312; 2 Strobh. (S. C.) 508; 29 Texas 335; 30 id. 524; 3 Texas App. 683; 21 Fed. Rep. 299.

They have likewise received the sanction of eminent text writers. Cooley on Const. Lim. 589, 590, 726; Bishop on Stat. Crimes, 237; 2 Bishop Crim. L. § 950, *et seq.;* 2 Whart. Crim. L. § 1431 *a.;* Tiedeman Lim. on Police Power, p. 175, *et seq.*

The grounds upon which such legislation has been sustained are various; but those which commend themselves to our judgment as most conformable to the principle of police power, are best stated by the Supreme Court of California: "The duty of government comprehends the moral as well as the physical welfare of the State; and, in this instance, it is asserted, on behalf of this law, that the passage of it is essential to the welfare of the people, both moral and physical. It is claimed that, from physical causes, men require respite from intellectual and physical labor, in the proportion of one day's rest in seven; and that a law which enjoins this is not only for the aggregate good of the society, but for the benefit of all the members.    It is said that the labor of six days, with this relaxation, is more productive in the long run than the uninterrupted labor of the week.    It is said, besides, that this law affords, indirectly, protection against oppression to employes, women, apprentices and servants, and that, but for the law, men would keep open stores and shops, because their neighbors did so, and that, by competition, a sort of compulsion exists to violate the laws of health."    *Ex parte* Andrews, 18 Cal. 678.

Mr. Tiedeman develops the same ideas, as follows: "Whatever the metaphysicians or theologians may tell us about free will, in the complex society of the present age, the individual is a free agent to but a limited degree.    He is in the main but the creature of circumstances. Those who most need the cessation from labor are unable to take the necessary rest, if the demands of the trade should require their unin-

terrupted attention to business. And, if the law did not interfere, the feverish, intense desire to acquire wealth, inciting a relentless rivalry and competition, would ultimately prevent, not only the wage-earners, but likewise the capitalists and employers themselves, from yielding to the warnings of nature, and obeying the instincts of self-preservation by resting periodically from labor. Remove the prohibition of law and this wholesome sanitary regulation would cease to be observed." Tiedeman Lim. on Pol. power, p. 181.

The foregoing considerations are certainly rational and plausible, and they bring the legislation within the distinct purview of the principles underlying and sustaining the proper exercise of the police power. We have considered the objection urged against the law that it operates unjustly against our fellow-citizens of the Jewish faith, who, in obedience to the mandates of their religion, observe Saturday as a day of rest. This objection has been often considered and overruled. 40 Ala. 725; 18 Cal. 678; 19 id. 130; 101 Mass. 30; 122 id. 40; 3 Serg. & R. (Penn.) 48; 8 Penn. St. 312; 2 Strobh. S. C. 508; 15 W. Va. 362.

The law leaves the Jew at entire liberty to observe his own religious Sabbath, but it is not bound to take cognizance of individual religious beliefs as a ground of exemption from the operation of general laws.

Uniformity in the day fixed is essential to the successful execution of the law, which would be rendered much more difficult if a different day of rest were assigned to various classes, besides the inconvenience to the business interests of the community which would result from the partial suspension of trade on several different days.

It only remains to consider the objection urged against the law on the ground of inequality, because of the numerous exceptions contained in the act.

The objection has not the slightest force. The law is not unequal in any constitutional sense. No person in the State is permitted to pursue any of the prohibited callings on Sunday; every person is at liberty to pursue those which are excepted. The same discretion which authorized the Legislature to determine that the public health, welfare and convenience required the adoption of the general rule, equally authorized it to exempt from its operation certain specified callings on the ground that the public welfare and convenience would be more hindered than advanced by the suspension of such callings.

It is not for us to control the law-making power in such a case, or to require it to fit its laws to a procrustean bed of our own construction.

It is said that, under the clause of the law exempting the keeping open of public and private markets, merchants who deal in all kinds of goods in the public markets will be at liberty to pursue their prohibited avocations while others engaged elsewhere in the same business will be restrained.

It is enough to say that the law does not expressly grant such privilege; and it will be time enough for us to determine whether, under a proper construction of the law, it exists, when a case directly involving the question is presented.

Thus, on correct principles sustained by overwhelming authority, we reach the conclusion that Act No. 18 of 1886, known as the Sunday law, is a legitimate exercise of the police power of the State, not violative of any inhibition contained in the Constitutions of the United States and of the State of Louisiana.

A like conclusion was reached by the respondent judge and sustained by a learned and vigorous opinion.

It is, therefore, ordered, adjudged and decreed that the restraining order herein granted be set aside, and that the application of relators for relief by prohibition and certiorari be denied.