## James F. Joy and others v. The Jackson and Michigan Plank Road Company and others.

Sureties who have undertaken, not for the payment of the mortgage debt, but that the mortgagor shall provide a sinking fund in certain specific securities for its payment, cannot be joined as defendants in a suit to foreclose the mortgage, under § 3567 of the Compiled Laws.

A special law, authorising a plank road company to mortgage its road, is not in conflict with the constitutional provision prohibiting the Legislature from authorising the sale of any real estate of any person by private or special law.

Such special law is to be regarded as an amendment of the company's charter.

An amendment to a charter of incorporation, which is merely auxiliary to the original object of the charter, and intended only to facilitate its attainment, is binding upon all the stockholders when accepted by a majority thereof. And a vote of the stockholders, directing action to be taken under such amendment, constitutes acceptance.

An amendment to the charter of a plank road company, authorizing it to mortgage its corporate property, to raise money for the completion of its road, is an amendment which may be thus accepted by a majority.

Under a special act, empowering a plank road company to "mortgage the road and other property of the company," the franchise of taking toll is to be understood as included with the road and its fixtures.

But the company could not, under this power, mortgage any franchise essentially corporate in its character, and which could not be enjoyed by a natural person.

The authority to mortgage is to be understood as authorising the ordinary power of sale to be inserted in the mortgage.

Under an authority to mortgage the whole road, the company might give a valid mortgage on any specific portion of it, upon which separate tolls can lawfully be collected.

The power of corporations, at common law, to sell or mortgage their corporate property and franchises considered, per CHRISTIANCY J.

*Heard November 19th and 20th, 1862. Decided January 13th.*

Appeal in Chancery from Jackson Circuit.

The Jackson and Michigan Plank Road Company was incorporated April 3, 1848, for the purpose of constructing a plank road from Jackson to Michigan, now Lansing. On September 1, 1851, this company, for the purpose of providing means for the construction and completion of their road, buildings and equipments, in pursuance of an act of the Legislature supplementary to their act of incorporation, approved April 3, 1851, and which had been accepted by a vote of the directors, and in pursuance of another vote of the directors, with the approval of a majority of the stockholders, given at a meeting called for the purpose, issued bonds to the amount of $15,000, payable in 1856, 1857 and 1858, with semi-annual interest at ten per cent., at the Michigan Insurance Bank at Detroit; in which bonds the complainants in this suit are named as

obligees. As collateral to these bonds, the company at the same time, under the authority of the said supplementary act, executed to the complainants as trustees for the persons who should become the holders of said bonds, a mortgage " of all that parcel of the plank road of the Jackson and Michigan Plank Road Company, now constructed and hereafter to be constructed, in and extending from the village of Jackson, in the county of Jackson, to and in the village of Eaton Rapids, in the county of Eaton, together with all the toll-houses, gates, and all other fixtures and erections and appurtenances of every name and kind thereto belonging or in anywise appertaining, together with all the franchises and rights of the said Jackson and Michigan Plank Road Company therein and thereto." A condition, among others, was inserted in the mortgage, that the company should provide and pay to complainants a sinking fund for the payment of the said principal sum of $15,000, of eight per cent. per annum, to be invested by the trustees; first, in buying the bonds of the company; or, secondly, the bonds of the Michigan Central Railroad Company; or, thirdly, the stock of the United States, New York, Massachusetts, Ohio, or the cities of Boston or New York, as the directors of the Plank Road Company might designate; or, in case they did not designate, as the trustees might deem expedient. The mortgage contained the usual power of sale of real estate mortgages.

Simultaneously with the execution of this mortgage, John Sumner, Daniel B. Hibbard, and a number of other persons, executed a bond to said trustees, in the penal sum of $20,000, reciting the said mortgage and its terms; and conditioned that if the Plank Road Company should pay all the liabilities of the company then existing, or which might thereafter exist, and constituting a lien or encumbrance upon the road mortgaged, by virtue of the act under which it was given, or any subsequent law, and should keep the road free and clear of all such liens and encum-

brances, so that there should be at no time any lien or encumbrance prior to said mortgage, and provide and pay to said trustees such a sinking fund as was specified in the condition of the mortgage, then the bond was to be void, otherwise of force.

The bonds of the company so issued were negotiated, and $6,500 thereof not having been paid by the company at maturity, or a sinking fund provided therefor, complainants filed their bill against the company to foreclose the said mortgage, and joined thereto as parties defendants the surviving obligors in the collateral bond (several of them having deceased), praying the usual decree of foreclosure, and decree against said surviving obligors for any deficiency. A portion of the obligors in the collateral bond did not appear, and the bill was taken as confessed by them.

The others, as well as the Plank Road Company, demurred to the bill, but the demurrer was overruled, and they afterwards answered, and the case was heard on pleadings and proofs.

It was shown in the case that the estates of the deceased obligors were solvent.

The Circuit Court in Chancery made decree as prayed, for the sale of "all and singular that parcel of the plank road of the Jackson and Michigan Plank Road Company, now (at the date of said mortgage) constructed and hereafter (after the date of said mortgage) constructed, in and extending from the village (now city) of Jackson, in the county of Jackson, to and in the village of Eaton Rapids, in the county of Eaton and State of Michigan, together with all the toll-houses, gates, and all other fixtures and erections and appurtenances, of every nature and kind thereto belonging or in anywise appertaining; together with all the franchises and rights of the said Jackson and Michigan Plank Road Company therein and thereto." And decree was also made against the sureties in the collateral

bond for the payment of any deficiency. The defendants appealed.

*Johnson & Higby*, for complainants:

1. The representatives of the deceased obligors in the collateral bond were not necessary parties. The statute authorizes the sureties to be joined in the foreclosure suit. *Comp. L.* § 3567. The *representatives* do not come within the description of the act. Payment by them could not be enforced as provided by the act, for an execution against an executor or administrator is expressly prohibited. Nor is the *representative* liable to be sued for a debt founded on contract. We submit that the intention of the statute is obvious, to give us the same remedy in these proceedings as we have in a court of law. Without the statute we could foreclose the mortgage and sue the surviving sureties in a court of law, and have execution for the balance; with the statute we can do it all in this Court.

But, independent of the statute, what are the reasons for making those representatives parties? If there are any, they must be on their account or on account of some of the other defendants. One reason assigned in the authorities is, that all the parties interested should be before the Court to aid in establishing or resisting the claim, or in taking an account, though they are not directly affected by the decree.—1 *Johns. Ch.* 437. There can be no pretence that the representatives are necessary parties for either of these purposes. Another reason for making joint obligors parties is to avoid the necessity of another suit for contribution.— *Ventris*, 348, *note;* 3 *Atk.* 405; 16 *Ves.* 321, *note.* This is the only reason that can exist in this suit. To effect contribution, if it can be effected in this manner, we must examine into the condition of these estates, and if they are found to be settled, then it becomes necessary that the legatees and devisees, and heirs at law,

should also be made parties; and in case of their decease, then their representatives must be brought in. Will the Court of Chancery enforce contribution under such circumstances? By statute, creditors must present their claims for proof within a given time, which may be enlarged by the Probate Court before the final settlement of the estate. If chancery has the power afterwards, we submit it must be an extraordinary case that would induce its exercise.

The question of parties is one addressing itself to the discretion of the Court, and will be governed by considerations of convenience: 9 *Cow.* 329; 1 *Johns. Ch.* 437; 10 *Wheat,* 152; 2. *Mason,* 181; 11 *Ves.* 429, *note; Ib.* 365, *note;* 16 *Ves.* 321, *note.*

*Lastly.* The Court will not enforce contribution against the estates of deceased co-sureties.—2 *H. & Gill,* 305; 1 *Pars. on Cont.* 32, *note,* 2.

2. The objection that the sureties cannot be made parties, because their obligation is not co-extensive with that of the principal, we submit upon the authority of *Jones v. Steinbergh,* 1 *Barb. Ch. R.* 250.

3. The act of 1851 is not unconstitutional. In the first place, it was not necessary to enable the corporation to give the mortgage. Private corporations, at common law, have the right of alienation, unless specially restrained by their charter or by statute.—2 *Kent,* 281; *A. & A. on Corp.* 104; 1 *Cow.* 513; 3 *Wend.* 96; 5 *Wend.* 590; 2 *Hill,* 265; 9 *Paige,* 470; 1 *Sand. Ch.* 280. But if we must rely upon the act of 1851, it is not open to the objection made. The mischief the constitutional provision referred to (*Art.* 4, § 23) was designed to prevent, was the great expense incurred in special legislation, and the rank injustice sometimes done to parties interested. Guardians, trustees and even administrators, were continually in the practice of making application to the Legislature for power to sell, under the plausible pretence of saving expense, while, in most instances, some ulterior

object was the moving cause. The constitutional provision was intended to compel all these applications to be made before the proper tribunal, where all parties could be heard, and the rights of all protected.

4. The mortgage is not invalid because not covering the whole road. How much it conveys is a question between the purchaser and the mortgagor. The mortgagor was competent to make it; and he is estopped from saying that he has no title to the property described, or that his description is imperfect.— *Wanzer v. Blanchard,* 3 *Mich.* 11.

*E. Pringle & C. I. Walker,* for defendants:

1. Without the aid of clear provisions of statute, a corporation of *this kind* has no right to mortgage or sell its road and franchise. The franchise was conferred for a public purpose, and the road is a public highway, subject to the franchise right of the corporation to take toll. The road and the franchise cannot, from their very nature, be separated.— 32 *N. H.* 484; *Pierce on Railw.* 397, 403, 514; *Redf. on Railr.* §235. It is true that corporations of a merely private character, like banks, &c., may convey all their property; but even such a corporation cannot transfer a franchise. And the property conveyed is not essential to the exercise of the franchise.— 7 *Gray,* 393; *Town v. Bank of River Raisin,* 2 *Doug. Mich.* 530.

2. The act of 1851, conferring the special authority in this case, is in conflict with §23 of Art. 4 of the Constitution.— 5 *Ibid.* 4.

3. The act was never accepted by the company. Acceptance by the directors was not sufficient.— 13 *Penn.* 81, 135.

4. The mortgage given was unauthorized by the act. The road authorized to be mortgaged was the *whole* road authorized to be constructed. The road is a unit — an entirety—and the mortgage of a part was clearly unauthorized. And if the act authorized the mortgage of the

franchise, it is the *whole* franchise; for, from its very nature, it is indivisible.—3 *Green, Ch.* 402; 25 *Barb.* 308; 32 *N. H.* 484. The company executing the mortgage are not estopped from setting up the illegality.—*Redf. on Rail.* 236.

5. The obligors in the collateral bond are not proper parties to the bill under *Comp. L.* § 3567. Their undertaking is not to *pay the debt;* it is entirely collateral.

6. But if they were proper parties, then the representatives of the deceased obligors should have been joined. —*Calvert on Parties,* p. 234; 1 *Dan. Ch. Pr.* 316; *Story Eq. Pl.* §§ 138, 139; *Edw. on Parties,* 99; 2 *Vern.* 194 *& note;* 3 *Atk.* 406; 3 *Swanst.* 147 *& note;* 16 *Ves.* 326; 1 *Sim. & Stu.* 247; 3 *G. & J.* 499; 2 *Edw. Ch.* 392; 5 *Paige,* 505. The exceptions to the rule are clearly de finded, and none of them exist in this case.

It is suggested, that as no execution can issue against administrators (*Comp. L.* § 2975), they cannot be made parties to a bill where the decree must be enforced by execution. But, 1. Our statute only applies to cases where commissioners are appointed; and, 2. The provision does not apply to proceedings in a court of equity, but to "actions" at law.—10 *Paige,* 516.

CHRISTIANCY J.:

We are all agreed that the obligors in the collateral bond were improperly made parties defendant, and that the bill, as to them, must be dismissed with costs against the complainants.

It is admitted that, but for the statute — *Comp. L.* § 3567 — they could not be joined in a foreclosure bill upon this mortgage. We do not think the statute can be fairly construed as extending to an undertaking like the present, which is not *for the payment* of the debt or any part of it, but entirely collateral—that the company should (among other collateral matters) provide a sinking fund equal to eight per cent. per year of the sum loaned, to be invested

by the trustees in bonds of the company or in certain specified stocks. The obligation of the makers of this bond would be discharged the moment the bonds or stocks were paid over into the sinking fund; yet the debt might remain entirely unpaid. Should the stock be lost or stolen, or become depreciated, this would not affect them. Their undertaking was purely collateral, and to be enforced by suit at law.

It is objected that the bill cannot be maintained against the company, for the following reasons:

I. That the company had not the right, under the general powers contained in its charter, and without a special provision of statute to that effect, to mortgage its road and franchises; its powers being conferred for a public purpose, which might be defeated by sale under a mortgage; and that the mortgage cannot, therefore, be maintained without the aid of the special act of 1851.

II. That it cannot be sustained under the act of 1851: because, 1st. The act conflicts with section 23 of article IV. of the Constitution, which prohibits the Legislature from authorising "by private or special law, the sale or conveyance of any real estate belonging to any person." 2nd. Because the act was never duly accepted by the company. 3rd. If the act be constitutional, and its acceptance sufficient, it will not sustain the mortgage in this case; because the act only authorized a mortgage "of the road or other property of said company;" which, it is insisted, must mean the entire road authorized by the charter to be ·constructed, while that covered by the mortgage is only a part of the road so authorized; and if the act authorizes a mortgage of the franchise of the company at all, then it must be for the whole franchise, because it is in its nature indivisible. We will consider these objections in their order.

I. Can this mortgage be sustained and enforced to any, and if so, to what, extent, without the aid of the special act of 1851?

JOY *v.* THE JACKSON AND MICHIGAN PLANK ROAD CO.

On the argument of this cause, this question, so far as it relates to the franchises of the corporation, was treated as if all the rights and powers conferred by the charter constituted but one entire franchise, which in its nature must be indivisible, no part of which could be assigned or mortgaged without the whole. I do not think this the true view of the subject. But all the several rights and powers conferred by the charter, may, I think, be treated as so many different franchises, some of which are essential; to the existence of the corporation, while others are not. Those which are essentially *corporate* franchises, without which the corporation could not exist, and which are, in their nature, incapable of being vested in, or enjoyed by, a natural person—such as the right or franchise of being a corporation, of having corporate succession, &c.— cannot be made the subject of sale or transfer, without a positive provision of statute, giving the authority and pointing out some mode in which such transfer may be effected: as this would be allowing the corporation "to transfer its corporate existence into another body"— to create a new corporation, which is an act of the sovereign power only to be performed by the Legislature. The franchise, also, of taking private property for the use of a road, though not perhaps necessarily a corporate right, yet being an exercise of the right of eminent domain, and to be exercised only by the officers, and in the manner specified in the charter, may also require positive legislative authority for its transfer.—See *Pierce on Railr.* 516, 517 & 518.—See also *Opinion of Judge Curtis, in Hall v. Sullivan R. R. Co.*, given at length in a note to the same work, *p.* 520, *et. seq.*, and in *Redf. on Railw. p.* 578, *et seq.* "But" (says J. Curtis in the case last cited) "the franchises to build, own and manage a railroad, and to take tolls thereon, are not necessarily corporate rights: they are capable of existing and being enjoyed by natural persons, and there is nothing in their nature

inconsistent with their being assignable.—See *Redf. on Railw. pp.* 573 to 589, where this whole subject is discussed.

As a general rule, corporations may, I think, be said to have an incidental power to dispose of their property, real and personal, either by sale absolute, or by mortgage or other mode of security, for any debt which they may rightfully contract, to the same extent as natural persons, except so far as that power may be restrained by their charter, by considerations connected with the purposes of their creation, or limited by express provision or just implication of some statute, or by the general policy of the State to be deduced from its legislation.—*A. & A. on Corp.* §§ 187, 191; *Pierce on Railr.* 513, 514, *and cases cited;* 2 *Kent,* 281; *Barry v. Merch. Exch. Co.,* 1 *Sandf. Ch.* 280.

Certain franchises—such (among others) as that of keeping a fair, a market, or a ferry, and taking tolls—have generally been recognized as property, and when vested in ¹ndividuals, at least, proper subjects of transfer and mortgage. — *Com. Dig. Title* " *Grant, C.;* " *Powell on Mort.* 17 (*b*); *Coote on Mort.* 101; *Hilliard on Mort. Ch.* 1, § 4; *Pierce on Railr.* 518, *note* 2, *and cases cited.* The franchise of maintaining a plank road and taking tolls is not necessarily a corporate franchise, more than that of a ferry. And it is difficult to discover any substantial reason why one should be held a proper subject of sale and mortgage and not the other. If public confidence is reposed in a plank road corporation, and there is an implied obligation on its part to afford the proposed public accommodation, these considerations would seem to apply with equal force to the legislative grantee of a ferry franchise: and if a transfer by mortgage of the franchise of taking tolls is to be prohibited in the one case, lest it might disable the original grantees from performing their duties to the public, it is difficult to see why the same consi-

derations do not equally apply to the other; and if a purchaser or assignee may perform those duties in the one case, why not in the other.—*Bowman v. Wathen*, 2 *McLean*, 376; and see *Felton v. Deall*, 22 *Vt.* 170; *Trustees of Maysville v. Boon;* 2 *J. J. Marsh*, 224; *Phillips v. Bloomington*, 1 *Green* (*Iowa*) 498; *McCawley v. Given*, 1 *Dana*, 261; *Biggs v. Ferrell*, 12 *Ired.* 1. The reasons against allowing such a transfer in the case of a railroad corporation would be stronger than in the case of a plank road, as more special guards are required for the protection of the public interest.

In *Enders v. Board of Public Works*, 1 *Gratt.* 364, a dock company, whose charter declared the dock to be a public highway, was held to have the power to mortgage its dock, though the power was contested as conflicting with its duties to the public: and see *Central Bridge Corp. v. Bailey*, 8 *Cush.* 319. In *Allen v. Montgomery Railr. Co.* 11 *Ala.* 437, it was held that, upon general principles, a railroad company had the power to mortgage its property in such a manner as to transfer the beneficial use of its franchise for the benefit of creditors, and that a special power for that purpose in the charter did not abridge the general power; and see *Mobile & Cedar Point Railway v. Talman*, 15 *Ala.* 472.

"The proposition" (says Mr. Pierce, in his able work on Railroads, p. 516), "that a corporation cannot perform acts as to its property which will disable it from performing its public duty, if admitted at all, must be confined to a very limited operation; so limited as to make the proposition itself doubtful;" and he gives some pertinent reasons for this view; yet there are, doubtless, many species of corporations as to which such considerations should be allowed to limit, if not to prohibit, the power of such transfer. But there are many cases where the public object for which the charter was granted would be promoted rather han prejudiced by a mortgage. The corporators or

stockholders may not have the pecuniary ability to achieve the enterprise, while the necessary funds might be readily raised on the security of a mortgage; and the enterprise completed: and, for similar reasons, it cannot, in ordinary cases, necessarily follow that the public would be injured by a sale of the property on foreclosure—such as the road and toll houses of a plank road company, and the right to receive tolls—as the stockholders may be insolvent, or unable to perform their obligations to the public, while the purchaser is both able and willing to do it. And the purchaser on foreclosure sale must doubtless take the property and franchises, subject to the performance of substantially the same public duties, which would attach to the ownership or control of the property in the hands of the corporation. Whether any, or what, qualifications ought to be attached to this proposition in any particular case, it is not necessary here to decide. But unless it can be made clearly apparent to the court, that the necessary, or' at least the natural and probable result, of giving a mortgage or of a sale under it would be such as must defeat the public object, or injuriously affect the public interest, the mortgage cannot be pronounced *illegal:* and if not strictly an illegal contract, then it is difficult to perceive any satisfactory ground upon which the corporation can be allowed to set up the public interest in defeasance of its own solemn deed, after having obtained the money on the faith of it. It is a question between the mortgagee or purchaser, on the one hand, and the public on the other, with which the corporation have no concern. The state may choose to waive, or insist upon its rights. *Central Bridge Corporation v. Bailey,* 8 *Cush.* 323.

I am aware of no provision of the statute or of the charter, which either expressly or by just implication, can be fairly construed as prohibiting a plank road company from mortgaging their road and fixtures, with the franchise of taking tolls; nor was any such provision cited

or relied upon in the argument. There are some special duties imposed upon the company, to be performed by its officers (especially in the 9th and 18th sections of the general act of 1848), which might raise some difficult questions if the road, and the right of receiving the tolls, should come into the hands of a purchaser on foreclosure sale; but they are the same questions (and no others) which would arise in case of a sale on execution. And this brings us to the question of the public policy of the State, in reference to the sale of a franchise vested in a corporation.

If the State had adopted a policy calculated to prohibit, or had failed to provide for, a sale on execution, of the franchise of taking tolls against plank roads and similar corporations, this would be a strong argument against the power to dispose of the same by mortgage: but if the State has waived, for the benefit of creditors, the injury which might result to the public by a transfer under execution, then in the absence of any prohibition against mortgaging, I am at a loss to discover upon what ground it can be held that a mortgage of the same property should not be held valid and to authorize a sale to the same extent. The power of the corporation to contract a debt cannot be doubted, and the power of this corporation to contract the debt for which the mortgage is given was not denied upon the argument, nor do I think it can be successfully controverted: see *Gordon v. Preston*, 1 *Watts*, 385; *Union Bank v. Jacobs*, 6 *Humph.* 515; *Barry v. Merchants' Exch. Co.* 1 *Sandf. Ch.* 280. If not paid, the law, at the instance of the creditors, would compel a sale on execution. Why may not the parties provide by contract, on the like failure to pay, for a sale to the same extent under a mortgage, as the law would have compelled, had no mortgage been given? The reasons are the same in both cases, and the effect upon the corporation and the public the same. But if the sale on

execution is, by the statute, a qualified or restricted sale, these restrictions and qualifications might perhaps apply equally to a sale under the mortgage. The Legislature has, by general statute, provided for the sale on execution of the franchise of any corporation authorized to receive tolls: *R. S. of* 1846, *Ch.* 55; *Comp. L. Ch.* 73, §§ 9 *to* 19: and though the language of the ninth section would seem to authorize a sale of all the franchises of the corporation, yet it is manifest from the twelfth and thirteenth sections, that nothing is sold or conveyed but the right to the possession of the road and its fixtures, and the right or franchise of receiving the tolls, and these not absolutely, but during the least period of time for which any bidder shall agree to take the same and pay the debt. And it is expressly provided by the fifteenth section, that the corporation "shall in all other respects retain the same powers, and be bound to perform the same duties, and liable to the same penalties and forfeitures as before such sale. It is clear from this, that no franchise, which is essentially and exclusively a corporate franchise, is authorized to be sold. That this statute, though previously passed, applies to these plank road corporations, see *James v. Pontiac and Groveland Plank Road Co.*, 8 *Mich.* 91.

The fact that the whole road authorized by the charter was not covered by the mortgage is, I think, no objection to its validity, and if the view I have taken of the case thus far be correct, the mortgage of a part is even less objectionable as regards both the public and the company, than a mortgage of the whole.

But again, there is nothing in the case tending to show that any portion of the balance of the road, from Eaton Rapids towards Lansing, has ever been constructed. We cannot presume without proof that it has been: as no legal duty rested upon the company to construct it. *People v. The Jackson and Mich. Plank Road Co.*, 9 *Mich.* 285. My conclusion, therefore, is that the mortgage in this

case was valid under the incidental or implied powers granted by the charter: though the sale on the mortgage, so far as it depends upon those incidental or implied powers, might perhaps be required to conform substantially to the mode of sale provided for on executions. Whether it would be otherwise, or whether the result at which I have arrived would be, in any respects, altered by the special act of 1851, is a question to be considered under that act, if valid.

II. We do not think this act comes in conflict with the twenty-third section of the fourth article of the Constitution against authorizing "by private or special law, the sale or conveyance of any real estate belonging to any person"; but that so far as the act has any effect, it must be treated as an amendment of the charter. The eighth section of the fifteenth article of the Constitution, authorizes the Legislature to amend any *act* of incorporation theretofore granted (of which this was one), by a vote of two-thirds of all the members elected to each house. The act in question was declared to take immediate effect (§ 3). By the twentieth section of the fourth article of the Constitution it could not be ordered to take immediate effect without a vote of two-thirds of the members elected to each house; which is the same majority as that required to amend an act of incorporation. We must, therefore, presume that the act was passed by the requisite majority. Whether it would be competent to prove the contrary we need not decide, as no such proof is offered.

But it is objected that this act was never accepted by the company. Its acceptance by the board of directors is admitted, and that a certificate of acceptance, signed by the president and secretary, and under the corporate seal, was filed in the office of the secretary of state, as provided in the third section of the act. Admitting that it is competent for the company to set up in defense to the mortgage, the want of assent by any stockholder to the

amendment, to the same extent that a stockholder not assenting might avail himself of the same matter, when called upon to pay a subscription, or in a bill in equity to restrain the corporation from applying the corporate funds in a manner only authorized by the amendment—a proposition which may admit of some doubt—it certainly cannot be pretended that it could be made available to the company to any *greater* extent. But granting the rule to be the same in both cases, the objection in this case can not be sustained. If the amendment were such as purported to effect a fundamental change, in the object, nature of the enterprise, or character of the business authorized by the charter, then I am inclined to think it would not be in the power of the Legislature to bind, by the amendment, any individual stockholder without his assent. But this amendment relates only to the mode of transacting the business, and effecting the enterprise which it was the object of the charter to authorize: it is merely auxiliary to the original object, and was intended only to facilitate its attainment. In such cases it seems to be now well, and I think justly, settled, that the stockholder has no right to complain; and that his assent will be presumed. Every man by becoming a stockholder, must be conclusively presumed to assent to the rule that a majority is to govern, touching the mode of carrying on the business or enterprise authorized by the charter, unless the Legislature has prescribed some other rule. He must therefore be held to agree that, to this extent, the majority may ask for, and accept, amendments to their charter.

In the present case it appears by the evidence in the record, that, at a meeting of the stockholders specially called for the purpose of taking into consideration the question of making this loan and securing the same by mortgage, the holders of a majority of the stock voted for a resolution to make the loan and to secure the same by a mortgage of the road, and that there was not a vote

against it; and that the holders of three-fourths of the stock voted at the same meeting for a resolution, authorizing the sale of the bonds at not less than ninety cents on their par value. These resolutions, and the call of the meeting, refer to the act of 1851, and if that act was at all necessary to authorize the loan or the mortgage, these votes are sufficient to show clearly its acceptance by the act of the majority of the stockholders.

The act of 1851 must therefore be held to be valid and to authorize the mortgage, whether it was previously authorized under the incidental powers of the corporation or not, unless the mortgage is to be held void because it does not cover the whole road authorized by the charter. But what is the extent of the operation of this act? Does it authorize the company to mortgage any other of its franchises than those I have endeavored to show might have been mortgaged under the incidental or implied powers contained in the charter. I think it does not. It authorizes the company to "mortgage the road or other property" of the company "to secure their bonds." It is silent on the subject of franchises; but as the road could be of no value without the power or franchise of receiving tolls, and its object was to enable the company to raise money on the security of the mortgage, the franchise of receiving tolls must be understood as included with the road and fixtures. And in thus expressly authorizing a mortgage for this specific purpose, it is fair to presume the Legislature intended a mortgage with the usual power of sale, and which on default should authorize an absolute sale of the property mortgaged, as the usual and most effectual means of rendering the security available.

But I think it very clear that no power is given by the act to mortgage any franchise essentially corporate in its character, and which could not be enjoyed by a natural person—such as the right of being a corporation. In other words, there is nothing in the language of the act,

or in the nature of the provision, which would authorize the corporation to transfer its corporate existence to the mortgagee, or the person who might become the purchaser under the mortgage. Such a power could hardly be implied in any case, and to authorize such a construction the language ought to be very plain and express: and it would at least be natural to expect, if such were the intention, some legislative provision for the mode of carrying it into effect. Is the old stock to be extinguished, or held in trust for the purchaser? May the purchaser on the mortgage foreclosure issue new stock, and if he may, can he be compelled to do so? If the purchase be made by a single individual, how are the directors and officers to be chosen? Or is he to be a corporation sole, without any of the officers required by the charter? These, and many other questions, would naturally require some legislative provision.

I am, therefore, satisfied no other franchises are authorized to be mortgaged than those I have endeavored to show would have been authorized under the incidental powers of the corporation; and the same considerations will apply, so far as relates to the question of mortgaging the whole or a part of the road.

So much of the decree of the Court below as relates to the obligors in the collateral bond must be reversed, and the bill as to them dismissed, with costs against complainants of both courts. And the decree of foreclosure and sale, entered in the Court below, must be so modified as to confine the sale to so much of the road between Jackson and Eaton Rapids as may have been already constructed, together with the toll-houses, gates, and other fixtures and erections appurtenant thereto, with the franchises and rights of keeping up and maintaining the said road, fixtures, erections and appurtenances, and of taking tolls thereon, and the cause must be remitted to the Court

below for further proceedings. Neither party to recover costs on the appeal.

MARTIN CH. J. concurred in this opinion.

MANNING J.:

I think the mortgage good under the act, and on that ground concur in the opinion of my brother Christiancy. Whether it would be valid without the act I have some doubt, and do not wish to express an opinion on that point, as it is not necessary to a decision of the cause.

CAMPBELL J.:

I concur entirely with my brother Christiancy, that the signers of the collateral bonds in question are not proper defendants for the reasons he has given. I am also of opinion, that the law which authorized a mortgage to be executed by the plank road company was properly accepted. Whether any amendment to a charter is not valid which is accepted by a majority in interest of the corporators, is a question upon which I express no opinion. This amendment is for a beneficial purpose, and creates no charge or liability, except against the common property for a common object.

I think the mortgage in controversy is within the authority expressly granted by the statute. A power to mortgage the whole, includes a power to mortgage less than the whole, provided the whole is divisible. The company in question had authority to build a road beyond the limits covered by this security; but a forfeiture for its non-completion could not, under the terms of the law, extend to the part actually completed within those limits. The right to take toll was not dependent on the completion of the road from Jackson to Lansing, but was apportioned according to the distance completed. The tolls are not made collectable in gross, but may be taken at

intervals along the road as completed, for the several separate spaces travelled. The road is thus, in fact, divided up into a series of toll districts, where there may be, and generally must be, separate receivers. There is, therefore, no practical difficulty, and no apparent objection to allowing any specific portion of the road, upon which separate tolls can be lawfully collected, to be mortgaged by itself.

It is true that no franchise which the law entrusts to the discretion of specific legal bodies can be exercised by any other person in violation of that trust. But it does not follow, because a certain authority is vested in a corporation, that its delegation must always amount to such a violation of trust. No corporation, for business purposes, was ever created which did not require a considerable portion of its affairs to be transacted by agents who are not corporate officers. In building a plank road, for example, the location of the road, and the steps necessary to secure the right of way against unwilling owners of land, must in general be acts of the corporation itself, and must derive their validity from the exercise of the discretionary authority which the charter has placed in particular hands. When the board of directors, or any other named body, are required to manage any particular business requiring the exercise of a statutory discretion, they cannot give their authority to any one not authorized by statute to receive it. But those acts of a ministerial character, which involve no further exercise of discretion than is called for in the business of private parties, transacted by ordinary business agencies, are usually allowed to be performed by corporation agents as freely as by private agents. The actual work of grading and planking a road is not a franchise which must be exercised by the directors or stockholders. The actual collection of tolls is not such a franchise. All of the peculiar corporate acts are done at corporate meetings by vote, if required to be done by the corporation itself; and I

doubt whether anything not susceptible of being done at such a meeting, can be regarded as beyond their power to delegate to any person whom they may select, unless it has been confined by the charter itself to some particular officer or agent. And what this company could authorize to be managed by separate agents for the corporate benefit, may, I think, be mortgaged separately under the statute. The mortgagees, in taking charge of and managing the road, act precisely like any other persons who might be employed for a similar purpose, the only difference being that the moneys are applied, when collected, to the benefit of different parties.

In receiving a mortgage of corporate property, where there is a statutory power to mortgage, the mortgagees must necessarily take it subject to such duties or encumbrances as the law attaches to the enjoyment of the property mortgaged, but not to such as may exist against the corporation without reference to that property. It is not necessary, in the case before us, to consider what liabilities are appended to the ownership of the portion of road mortgaged to the complainants, and I shall make no attempt to determine them.

Entertaining these views, I do not deem it necessary to express any opinion upon the power of the plank road company to make such a mortgage independent of the statute.

I am inclined to think that such a power exists in regard to such matters as require no strictly official or corporate interference to manage, and that it would, therefore, cover the use and enjoyment of most of the corporate property. But in the absence of any express authority to alienate or mortgage, a very serious question may arise, whether the alienee of such property may not take it subject to a somewhat larger liability for corporate acts and omissions. As the law upon this subject cannot be regarded as very clearly defined upon all points, I prefer to reserve my opinion upon it, as the mortgage was made

under a statutory power, and valid under that, beyond question.

I concur, therefore, in the result arrived at by my brother Christiancy.

Decree against the plank road company modified, and against the other parties reversed.