STATE OF MINNESOTA

*vs.*

THE WINONA AND ST. PETER RAILROAD CO.

The legislature, having the power so to do, prescribed a maximum rate of toll on defendant's road, and provided that, if it should demand and receive any higher rate, it should be deemed to have misused its power, and violated the terms on which its charter and franchises were granted, and that proceedings should be instituted against it, for the forfeiture of its franchises, or the collection of a fine not exceeding $1,000 for each such violation at the discretion of the court.

On demurrer to a complaint charging a violation of the act; *Held*, that the legislature had the right to affix a penalty to such violation, and,

unquestionably, the right to affix a money penalty, as above; that the order of the district court, sustaining the demurrer, must, therefore, be reversed, whether or not, (upon which no opinion is expressed,) the legislature had the power to affix a forfeiture of defendant's franchises as a penalty.

_Chapter_ 24 _of the General Laws of_ 1871, after establishing maximum rates of freight for the carriage of goods and passengers on all railroads in the state, provides, _sec._ 9, " If any railroad company shall demand or receive higher rates for such transportation than are established by this act, it shall be deemed to have misused its powers and violated the terms on which its charter and franchises were granted ;   *   *   and it is hereby made the duty of the attorney general   *   *   *   to cause proceedings to be instituted and prosecuted against such railroad company   *   *   for the forfeiture of the charter and franchises of such company, or for the collection of a fine not exceeding one thousand dollars for each violation of the provisions of this act, at the discretion of the court before which the case shall be tried."

At and before the passage of this act the defendant was a railroad corporation, created under the laws of the territory and state of Minnesota.

The state, by its attorney general, brought this action in the district court for Olmsted county, alleging in its complaint that the defendant had, after said act took effect, demanded and received from John D. Blake & Co., of Rochester, (the plaintiffs in the next preceding case,) a greater sum than the maximum amount allowed by the act, for the transportation of certain goods over its road from Winona to Rochester, and that defendant had thereby misused its powers and violated the terms on which its charter and franchises were granted.

The state thereupon prayed judgment of forfeiture of

·defendant's corporate rights, privileges and franchises ; that defendant·be dissolved, and for general relief.

The defendant demurred to the complaint; the district court sustained the demurrer and ordered judgment for the defendant, from which order the state appeals. ·

F. R. E. Cornell, Attorney General, and James Gilfillan, for the state.

I. In none of the acts incorporating respondent is there a grant in terms of the right to charge tolls.

II. The right to establish railroads, and to charge tolls, and especially the right of eminent domain, is a branch of the royal prerogative, and partakes more or less of the quality of sovereignty, which it is not competent for the legislature even to delegate to *ordinary corporations*. 2 *Blackstone's Comm.* 37 ; 3 *Kent, 8th ed.* 572 ; 1 *Redfield on Railways, ch.* 5 ; *Erie & N. E. R. R. Co. vs. Casey,* 26 *Penn. St.* 287 ; *Prosser vs. Wapello Co.* 18 *Iowa,* 327 ; *State vs. Boston, C. & M. R. R. Co.* 25 *Ver.* 433 ; *State vs. Rives,* 5 *Iredell,* (*N. C.,*) 29.

III. So far as corporations are authorized to exercise such rights, they are necessarily public corporations, engaged in a public employment, discharging functions belonging to the state. *Authorities last cited, and Bloodgood vs. The Mohawk & . H. R. R. R. Co.,* 18 *Wend.* 9 ; *S. C.,* 14 *Wend.* 51 ; *Heyward vs. Mayor of N. Y.,* 7 *N. Y.* 314 ; *Embury vs. Connor,* 3 *N. Y.* 511 ; *Beekman vs. The Saratoga & S. R. R. Co.,* 3 *Paige,* 45 ; *Swan vs. Williams,* 2 *Mich.*; *Railroad Co. vs. Caldwell,* 39 *Penn. St.* 337 ; *Cambden Co. vs. Bonham,* 9 *Watts & S.,* (*Penn.,*) 27 ; *Davidson et al. vs. Uline et al., Sup. Ct. of Minnesota.*

IV. They must be considered as trustees or agents of the state, entrusted with certain of its powers, for the purpose of effecting particular objects coming within the legitimate ends of government. Upon no other theory is it possible to justify

the imposition of taxes to forward the enterprises in which they are engaged, or the exercise by them of the right of eminent domain. *Talcott vs. the Township of Pine Grove, U. S. Cir. Ct., Western Dist. of Mich.*

V.   The right to establish a railroad and charge tolls, and the right of eminent domain, being sovereign rights, the legislature cannot alienate them.   The extent to which the legislature can go, is to entrust the exercise of such franchises to an individual or corporation, as the trustee or agent of the state, and subject to its control.

This right of control no one legislature can irrevocably grant away to any corporation, certainly not, unless upon consideration contemporaneous with the creation of the franchise; and it may well be urged that under no circumstances can the legislature contract away this supervisory right of the state.   27 *Vt.* 140 ; *Cooley's Const. Lims.* 282-3 *and note;* 13 *How.* 71.

VI.   The legislature may regulate the exercise of any prerogative franchises conferred by it, and where it proposes at any time to impose any regulation, the party objecting to it must show that the state has excluded itself from the right to pass such a regulation ; that it has made a contract with him binding itself not to claim such right.

The exercise to a reasonable extent of legislative control and power over railroads, in the regulation of their rates of fare and freight, is valid, provided it neither destroys nor essentially modifies any indispensable franchise of the corporation.

No such franchise is either destroyed or essentially modified in this case by the act of 1871.

VII.   To exempt itself from the operation of the act of 1871, the respondent must show—

First.   That the state has conferred on it the franchise to take tolls.

State of Minnesota v. The Winona and St. Peter Railroad Co.

Second.  That it has bound itself by contract in defendant's charter not to regulate the tolls.

But the charter of respondent does not vest it with the franchise of taking tolls.  It may claim that the right to charge tolls is an incident of the right to build and maintain a railroad, and by inference is conferred with the principal right.  This is taking the right by implication.  But that is not enough.  It must build another implication on that, to-wit: that by implication the state has made with it a contract not to regulate those tolls.  Whatever may be said of the right to charge tolls as incident to the right to build and maintain a railroad, certainly the right to be free from state control as to the rate of tolls, is not a necessary incident of the right to charge them.

But nothing is taken by implication against the public. *Charles River Bridge vs. Warren Bridge*, 11 *Peters*, 420; *Providence Bank vs. Billings, et al.* 4 *Ib.* 514; *U. S. vs. Arredendo*, 6 *Ib.* 738; *Jackson vs. Lamphire*, 3 *Ib.* 289; *Beatty vs. Lessee of Knowles*, 4 *Ib.* 168; *Stourbridge Canal vs. Wheeley, et al.* 2 *B. & Ad.* 793; *Bradley vs. The N. Y. & N. H. R. R. Co.* 21 *Conn.* 294; *State vs. The Boston, C. & M. R. R. Co.* 25 *Ver.* 433.

VIII.  In 1866, *Sp. Laws, p.* 22, an act was passed amending the act of 1862, so as to grant the company further time for constructing its road.  The act contains this provisio : " provided that said company shall be bound to carry freight and passengers upon reasonable terms."  Assuming that in the exercise of the franchise to maintain and operate a railroad, conferred by its charter, the company was under the same obligation to carry before, as after the act, the words " upon reasonable terms," neither added to nor took from its duties and obligations as they existed before.  For all common carriers are bound to carry upon reasonable terms.  *Angell on Carriers, secs.* 123, 124.

The same provision substantially, is contained in *sec.* 4, *art.*

State of Minnesota v. The Winona and St. Peter Railroad Co.

9, of the constitution, the only effect of which upon the duties and obligations of such corporations, is to prevent them limiting their carrying business to particular classes of freight, and to prevent them making discriminations.

IX. A consideration is as essential to a legislative contract, as to any other.    24 *How.* 300 ; 31 *Conn.* 410 ; *Cooley's Const. Lims.* 380.

In the act of 1866, there was no consideration on the part of the company, unless it be assumed that prior to that time the company had the right to impose unreasonable terms for carrying.    The act merely relieved the company from the consequences of its default to comply with the terms of the act of 1862.

X. Assuming, however, that the company has a vested right to charge *reasonable compensation,* then we say that inasmuch as the court will not assume an act of the legislature to be unconstitutional, it will presume that any rate fixed by any act, is reasonable, until the contrary is shown.    The burden of showing that the limit fixed by the act, makes the act unconstitutional, is upon the party alleging it.

Mitchell & Yale, for Respondent, cited the same authorities as in the next preceding case.

*By the Court.*—Ripley, Ch. J.—The demurrer interposed to the first and second counts of the complaint in this action admits that the defendant demanded and received of J. D. Blake & Co., tolls in excess of the rates prescribed by *ch.* 24 *of the Laws of* 1871, and which has been decided in the case of *J. D. Blake & Co. vs. W. & St. P. R. R.* to be constitutional, valid and binding on this defendant.

*Sec.* 9 of said act provides that if any railroad corporation shall demand or receive such higher rates, it shall be deemed

to have misused its powers, and violated the terms on which its charter and franchises were granted, and proceedings are to be instituted against it for the forfeiture of its franchises, or the collection of a fine not exceeding $1,000 for each such violation, at the discretion of the court.

The defendant objects that this law impairs the obligation of a contract, because it declares that to be a cause of forfeiture, which was not such before the act was passed.

The legislature possessed, as far as the defendant's right to take tolls was concerned, full power and authority to pass " all manner of wholesome and reasonable laws, *either with penalties or without*, not repugnant to the constitution, as it should judge to be for the good and welfare of the commonwealth, and of the subjects of the same." *Com. vs. Alger*, 7 *Cush.* 53. The express grant of authority to the legislature, quoted in that case from the constitution of Massachusetts, is not found in our constitution. It declares, however, that government is instituted for the security, *benefit* and protection of the people, and it is indisputable that, in creating a legislative department and conferring upon it the legislative power, the people of Minnesota must be understood to have conferred the full and complete power, as it rests in and may be exercised by the sovereign power of *any country*, subject only to such restrictions as they may have seen fit to impose, and to the constitution of the United States.

Within these limits the legislature is intrusted with the general authority to make laws at discretion. *Cooley's Const. Lims. p.* 87. The citizens of this state may therefore be controlled and regulated by their legislature in the use of their property, to the full extent, at least, that those of Massachusetts may be by theirs.

As to the money penalty there can be no question of the validity of the section.

State of Minnesota v. The Winona and St. Peter Railroad Co.

As to the forfeiture the defendant's authorities do not sustain its position.

Cooley is cited to the point, that a law is void, which declares a forfeiture of the charter of a corporation for acts or omissions, which constituted no cause of forfeiture at the time they occurred. *Const. Lim.* 292. But this act was in force at the time the defendant exacted the rates complained of. Therefore they *were* a cause of forfeiture when they occurred.

The case of *People vs. Jackson, &c. Plank Road Co.*, 9 *Mich.* 285, cited by Cooley in support of that proposition, and by the defendant, is cited by the latter for the statement by two judges of the supreme court of Michigan, that an act, subsequent to one under which a company has been already organized, which declares a total forfeiture for that, which by the first act was cause of partial forfeiture only, is void as to such company for violation of the obligation of the contract.

The defendant urges that, before the passage of the act of 1871, it was no cause of forfeiture at all, that this defendant should charge rates in excess of those prescribed by the act.

Of course not, for none such had been prescribed. But the defendant under its charter, was bound to conform to such laws as the legislature should thereafter establish, fixing the rates of toll. The question may be asked, therefore, if it is not a misuse of its franchise to exact toll in defiance of such laws? And if it is, the further question arises, whether the defendant was not liable to forfeit its franchise by just such conduct as this?

But it will be seen that Cooley does not cite the aforesaid opinion to support any such proposition as that of the defendant, and a reference to the case will show that it was not so intended.

The plank road company had the right to take tolls on

completion of five miles thereof, and, under its charter, that right could not be affected by failure to complete the rest of the road contemplated. Its franchise as to such unfinished part, only, could be touched. A subsequent general plank road law, prescribing a total forfeiture for failure to complete roads, was held void by said justices, so far as it applied to this plank road, as impairing the obligation of a contract, which is all plain enough, if the original charter of the company was as above stated, and shows why the case is cited by Cooley.

Therefore, the subsequent act undertook to make that an offense, involving forfeiture of the whole by the failure to complete, which was not such an offense at the time such failure occurred. Nor was it previously a cause of forfeiture. But to make the dictum aforesaid applicable to the case at bar, one of two things must be assumed : either that the legislature, having the power to control defendant in its charges, had no right to affix a penalty to a violation of any regulation it may at any time establish, subsequent to the charter, which is plainly absurd ; or that it has no power to affix a forfeiture of the franchise as a penalty for such violation, as to which it is not necessary to express an opinion.

So far as the money penalty is concerned, the act is unquestionably valid and the demurrer should not have been sustained. Order appealed from reversed.